## Catron v. Commonwealth.

(Decided September 27, 1910).

### Appeal from Wayne Circuit Court.

1. Prosecution for Murder—Trial—Closing Argument by Employed Counsel.—It has repeatedly been held by this court to be permissible, and has long been the practice throughout the State, for employed counsel to make the closing argument for the Commonwealth in felony cases, if the Commonwealth's Attorney assents to it. Adams v. Comlth, 129 Ky. 259, Bennyfield v. Comlth. 17 S. W. 271, Roberts v. Comlth. 24 Ky. 440.

2. Same.—Section 27, Criminal Code, does not require the Commonwealth's Attorney or his official assistant to close the argument for the prosecution, but requires that it shall be done by counsel for the Commonwealth, meaning any counsel appearing in the case for the Commonwealth.

3. Trial—Evidence—Exhibition of Bloody Garments.—Where on the trial of a defendant in a murder case, bloody garments worn both by the deceased and a witness for the state, were exhibited to the jury, which was objected to by the accused, while it may be it would have been better not to have allowed its introduction of the latter, the incident in its worst aspect was harmless.

W. R. CRESS & SON and O. H. WADDLE for appellant.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

This appeal is prosecuted from a judgment of conviction for voluntary manslaughter, under which appellant is sentenced to twenty-one years' confinement in the State penitentiary. There was but little provocation for the homicide, and no justification.

The parties were young men, of good reputation, living in a remote part of Wayne county. They were neighbors, and there appears no cause for hostile feeling between them. They and others were attending a religious meeting being held at Edward's Chapel. A boyish prank between younger members of the crowd led to short words, and it may be admitted, to voluntary interference by Reuben Bertram, who perhaps was the elder of the crowd. The following night when the same parties were returning to their homes from the church, in company with a number of other young people of both sexes, certain flippant remarks by a brother of appellant were rebuked by Reuben Bertram. Short words between him and appellant and Charlie Catron, another brother of appellant, were indulged, followed almost immediately by blows. In a moment Reuben Bertram was lying in the road dying from a knife stab in the back, and with his throat cut. Appellant admits that he did the cutting, but claims that it was done in his necessary self-defense.

All who were present, some eight or ten, testified. All agreed that Bertram was walking just in front of appellant and his brothers, carrying a lantern. Nothing had occurred to excite notice. When appellant's brother made the remark which Bertram admonished him for, several of the witnesses say that Charlie Catron kicked the lantern from Bertram's hand and stabbed him in the back, and that as Bertram turned, appellant thrust his knife into his neck, severing the jugular vein. Appellant and his witnesses testified that Bertram began the difficulty by cursing appellant and throwing rocks at him. They say that it was not until after Bertram had twice hit appellant with rocks, and was holding him at arm's length and aiming to hit him again, that appellant did the cutting. He claims that he did all the cutting. The witnesses disagree sharply at this point, but numerically, for what that may be worth, they preponderate for the prosecution. Some were obviously biased by relationship, or partisanship, or both. Others apparently were unbiased. It is in just such instances that the acquaintance and observation of a trial jury are peculiarly valuable in weighing conflicting testimony. A circumstance that seems to us to militate strongly against appellant's story is that the knife wound in the back could not have been inflicted by him in the situation in which he was placed.

He claims that he was being held from behind in the embrace of Dave Catron, a partisan of Bertram's; that Bertram had hit him a stunning blow on the head with a rock, and another severe blow on the shoulder; that Bertram then took hold of appellant's collar with the left hand, while his right hand was drawn to strike again with a rock. Appellant claims that it was at this juncture he thrust out with his knife and stabbed Bertram in the back. The wound was well up on the left side of the spine, and the knife blade extended to within a half inch or such matter of the heart. Appellant was using an ordinary pocket knife. He was a small man. Bertram was considerably larger. The wound in Bertram's neck was inflicted on the left side and from the front. If Bertram was holding appellant at arm's length the latter could scarcely have reached around him so as to find momentum for such a blow as he inflicted and at the place described. Besides, his instinct would have been to strike in front (as he did in fact in the final stroke), so much easier to reach, and where the force of his blow would naturally be more effective. The facts seem to us to bear out the jury's evident conclusion, that Bertram was struck from behind before he made any demonstration to fight.

This much is said in response to the earnest argument of appellant's able counsel that the verdict is palpably against the weight of evidence.

It is insisted for appellant that the trial court erred in permitting employed counsel to close the argument before the jury. The Commonwealth's Attorney was absent. The county attorney was present, participating in conducting the trial, and for aught shown retained control of the prosecution throughout, although his assistants, employed by relatives of the decedent, propounded the questions to all the witnesses but one and made the arguments for the prosecution. It has been repeatedly held by this court to be permissible and has long been the practice throughout the State, for employed counsel to be permitted to make the closing argument for the Commonwealth in felony cases if the Commonwealth's Attorney assents to it. (Adams v. Commonwealth, 129 Ky. 259; Bennyfield v. Commonwealth, 17 S. W. 271; Roberts v. Commonwealth, 94 Ky. 449.) In truth, there is no more reason for denying employed or special counsel the closing argument to the jury, than

for denying them the right to make any argument at all. Section 227, Criminal Code, is: "Unless the case be submitted to the jury without argument, the defendant or his counsel shall commence, and the counsel for the Commonwealth shall conclude, the argument to the jury, unless the plea be a former conviction or acquittal, when the order of argument shall be reversed."

There is no such officer as "Counsel for the Commonwealth." The Constitution provides for Commonwealth's Attorneys, and for county attorneys. The statute makes the county attorney the official assistant of the Commonwealth's Attorney in felony prosecutions, and in the latter's absence the former acts in his stead. (Sec. 127, Ky. Stats.) It is significant that section 227, Criminal Code, supra, does not require the Commonwealth's Attorney, or his official assistant, to close the argument for the prosecution, but requires that it shall be done by counsel for the Commonwealth, meaning any counsel appearing in that cause for the Commonwealth. It may be conceded that the Commonwealth's Attorney, and county attorney, control the prosecution as counsel, and might even reject all other assistance. Instances are easily imaginable where the official legal counsel for the State ought to reject proffered services of other counsel. But where other counsel are admitted into the case, in those particulars pertaining to the duties of a barrister which are not required by statute to be done by the official attorney of the Commonwealth, they may perform as the Commonwealth's Attorney or county attorney might. Nothing said in Keeton v. Commonwealth, 32 Rep. 1164, was intended to convey a different practice from that herein indicated.

A bloody shirt-waist worn by one of the witnesses for the prosecution was allowed to be exhibited to the jury while the witness was testifying. She had said immediately after decedent was struck the first lick she took hold of him to lead him out of the fray, and that then she felt his blood on her hand and clothing. The garment was introduced, perhaps as tending to support her testimony. The tendency was slight, to say the most of it, and it may be it would have been better not to have allowed the introduction of the garment. But we do not regard the incident as material. Counsel for appellant argue that it afforded the occasion for a harrowing episode in the tearfulness of the witness. But the garment worn by the deceased, showing the knife wound and his

blood, were also introduced in the same connection, and would have perhaps served the same purpose. It is doubtless true that such dramatic incidents work more directly upon the imagination of the auditor than a bare recital of the deed, however eloquent—a fact made use of by Mark Anthony when delivering the funeral oration over Caesar. The introduction of the garments worn by deceased when killed, to show the position of the wound, were admitted, and were admissible it is conceded, blood and all. It could scarcely be that the jury would be more moved by the blood of the deceased upon his sister's dress, than at the sight of his own mutilated and blood-stained clothing. So we conclude that the incident complained of, in its worst aspect, was harmless.

We fail to see, either, wherein the comment of counsel for the prosecution in his closing argument, which was objected to by appellant and ruled out by the trial court, could have been prejudicial to appellant. On the contrary, in view of the court's ruling, it appears to us it was equally apt to be hurtful to the prosecution. But surely we have not fallen into such uncertain times, as that such collateral remarks by counsel as an illogical inference can sway from the path of duty a sober-minded, reflecting jury. We doubt if the matter was error in law, but if it was, it was innocuous.

In the instructions the trial court told the jury in the first what constituted murder, and manslaughter, then in a following instruction, defined the law of self-defense. In the two, when read together, the whole law of the case on these points is correctly stated. It is argued that the complete law of self-defense should have been stated in the first instruction. But it is enough if the instructions read together, correctly set out the law of the case in reasonably clear, concise terms and connection. That they do in this instance.

We do not find any reversible error in the record, consequently the judgment is affirmed.