## Fields v. Commonwealth.

(Decided October 2, 1928.)

### Appeal from Perry Circuit Court.

1. Homicide.—Evidence, in prosecution for murder, held sufficient to sustain conviction for manslaughter.

2. Criminal Law.—Permitting employed counsel, assisting commonwealth in murder prosecution, to make concluding argument to jury, held not erroneous.

3. Homicide.—Dying declaration, immediately after deceased had stated in effect that he knew he was fast passing, and did not believe what doctor said to him when he stated that the would recover, held admissible.

4. Homicide.—Error in permitting witnesses testifying to dying declaration to state that declarant directed them to employ certain lawyer to assist commonwealth in prosecution of the case held not prejudicial, though declaration was incompetent to such extent.

5. Criminal Law.—Under Criminal Code of Practice, sec. 340, judgment of conviction will not be reversed for any error of law appearing on the record, when upon consideration of the whole case the court is satisfied that substantial rights of defendant had not been prejudiced.

6. Homicide.—In prosecution for murder, admission of evidence to effect that holes in coat worn by deceased were bullet holes, held not to constitute prejudicial error, where it was admitted by defendant that he shot deceased.

7. Criminal Law.—Judgment of conviction will not be reversed because of trivial matters occurring at time of trial, which had no influence on minds of jurors, and which in no way conduced the finding or verdict.

F. J. EVERSOLE and JESSE MORGAN for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

Opinion of thhe Court by Judge Logan—Affirming.

On the 18th day of December, 1927, in Perry county, the appellant, John Fields, shot and wounded Hiram Wooton, from which wounds so received Wooton died on the 29th day of December, 1927. He was thereafter indicted, charged with the offense of murder. His trial resulted in a conviction for the offense of manslaughter, and his punishment was fixed by the jury at 21 years in the penitentiary.

Wooton was a deputy sheriff of Perry county, and, about two weeks before he was shot by appellant, in the discharge of his duty he had arrested him for a misdemeanor, for which offense he was fined. Thereafter appellant had some difficulty with the father of Wooton, which resulted in his being placed under a peace bond. He claimed that, a day or two before he shot Wooton, Wooton had kicked him. On Saturday night before he shot Wooton on the following morning, he sought to obtain a pistol on two occasions. He also made statements in the nature of threats against Wooton. On Sunday morning, in company with his half-brother, he visited two or three places in the village where the killing took place. Wooton was in a storehouse operated by one Combs. The half-brother of appellant went into this storehouse, and about 20 minutes thereafter appellant entered. At the time Wooton was standing near the stove, his right hand holding a piece of timber used to bar the entrance to the passageway behind the counter, and his left hand down by his side. When appellant came in, without speaking a word, and without any demonstration or word on the part of Wooton, he hurriedly drew his pistol and fired two shots at Wooton. Wooton fell to the floor, when appellant leveled his pistol at him again and ordered him not to move his hand, and stated, in substance, if he made any move, he would shoot him through the heart. He directed some of those who were present to disarm Wooton. He said at the time, "You will kick me again, will you?"

The substance of what has been stated above was testified to by the witnesses for the commonwealth. The testimony offered by the commonwealth established a case of murder. The appellant and his half-brother testified that, when appellant entered the storehouse, Wooton drew his pistol, or attempted to do so, and that appellant was compelled to shoot him in his self-defense.

The appellant, in his brief, relies upon one ground for reversal, that the verdict is against the law and the evidence. There is no sort of reason why he should expect a reversal on this ground. Not only did the jury decide the case in accordance with the weight of the evidence, but the verdict is in accordance with the great weight thereof.

Another ground relied on for reversal is that employed counsel assisting the commonwealth was allowed by the court, over the objection of the appellant, to make the concluding argument to the jury. This question was decided adversely to the contention of the appellant in the case of Catron v. Commonwealth, 140 Ky. 61, 130 S. W. 951. The cases cited in that opinion show that the question there discussed was not a new one, and that this court had previously determined that counsel employed to assist the commonwealth in a criminal prosecution might properly conclude the argument to the jury.

One other ground only is relied on for reversal, and that is that incompetent evidence was admitted over the objection of appellant, and that objections to competent evidence offered by him were sustained. The dying declaration of Wooton as testified to by his wife and his father was admitted as evidence. Before admitting this evidence, the court examined the witnesses, not in the presence of the jury. The court overruled an objection interposed by appellant to the dying declaration. It has been held by this court in a long line of decisions that a dying declaration cannot be admitted unless made under the sense of impending dissolution. The evidence of the witnesses in this case showed that Wooton had repeatedly stated that he could not get well, and that he did not believe what the doctor said to him when he had stated that he would recover. Immediately before making the dying declaration, he said, in effect, that he knew he was fast passing. The court was clearly right in admitting the dying declaration as testified to by the witnesses. It has also been held by this court in a long line of decisions that the dying declaration must be limited to the act of killing and such circumstances as immediately attend such act and constitute a part of the res gestae. It is suggested by appellant that the dying declaration did not relate to the res gestae, but merely expressed the opinion of the dying man as to what took place at the time of the shooting. The dying declaration was exceedingly brief.

The declarant stated, in substance, that appellant came into the storehouse and immediately began to shoot, and that he was doing nothing at the time. This was the statement of a fact, and not the expression of an opinion. The declaration is in harmony with the testimony of other witnesses for the commonwealth. The only part of the dying declaration which was incompetent was that part where the witnesses testified that the declarant directed them to employ a certain lawyer to assist the commonwealth in the prosecution of the case. While incompetent to this extent this court will not reverse a case like this because of an error so trivial which could not have been prejudicial.

In fact, a judment of conviction shall not be reversed for any error of law appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have not been prejudiced thereby. Section 340, Criminal Code, allows this court to reverse only for errors of law which, upon consideration of the whole case, convince the court the substantial rights of the offender have been prejudiced by such errors. The converse of the rule is true. The necessity for such a rule is exemplied by the record in this case. The brief for appellant is directed wholly at errors in the admission and rejection of evidence. Some of the evidence was not competent, but it was of a trivial, immaterial nature. A witness, in stating some fact in connection with his seeing appellant the night before the killing, interpolated the statement that he was drunk; another witness stated that he could not repeat a conversation with appellant word for word; another witness stated that on the night before the killing appellant seemed to be drunk; another witness stated that when he saw him he appeared to be "in bad trouble," and that he could tell that "he was in a dread." There are other statements of witnesses to which objections were made of a similar nature. They are all trivial, and could have made no deep or lasting impression on the jury. These little things happen in the course of any trial, and this court from a consideration of the whole record, is required to determine whether such errors, if any, prejudiced the substantial rights of the defendant.

When the father of Wooton was testifying, the coat worn by his son at the time he was shot was exhibited to him, and he was asked to state what he found in the back of the coat on one side of the seam. His answer was that

he found a bullet hole. Again he was asked about another part of the garment, and he answered that he found there a bullet hole. Counsel for appellant insist that the admission of this evidence was prejudicial. If there had been a dispute as to how Wooton came to his death, and the commonwealth had been trying to show that he came to his death as the result of a bullet wound and this evidence had been necessary to establish the guilt of the appellant there would be merit in the contention of counsel for appellant that the witness should not have been allowed to testify that bullet holes were in the coat. No such questions, however, were in dispute. It was admitted by appellant that he shot Wooton, and, if he shot him with a pistol loaded with bullets, necessarily the bullets made holes in his garments. The appellant was not prejudiced by the admission of this evidence. A judgment of conviction should not be reversed because of trivial matters occurring at the trial, which had no influence on the minds of the jurors, and which in no way conduced to the finding of the verdict. It is true that there are instances when it is difficult to reach a conclusion as to whether the admission of incompetent evidence, or the rejection of competent evidence, was prejudicial. There are other instances when the mind of the court is left in no doubt, and it is easily discernible that the admission or the rejection of certain evidence was prejudicial to the substantial rights of the defendant. Again there are instances where the court reaches the conclusion without difficulty that the admission of incompetent evidence, or the rejection of competent evidence, could not have affected the verdict one way or the other. The substantial rights of a defendant should always be protected by courts, but the right of the state to have a defendant punished for a crime should not be delayed on account of small and inconsequential irregularities occurring at the trial.

We have reached the conclusion that the jury dealt leniently with appellant, and that every substantial right of his was well protected by the trial judge, and that he has no just reason to complain because of the punishment inflicted on him.

Judgment affirmed.