**Luther David EARL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

April 7, 1978.

Discretionary Review Denied Sept. 12, 1978.

Damon A. Vaughn, Henderson, for appellant.

Robert F. Stephens, Atty. Gen., Reid C. James, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWERTON, LESTER and REYNOLDS, JJ.

HOWERTON, Judge.

A jury found Luther David Earl guilty of first degree manslaughter, and fixed his punishment at ten years in the penitentiary. From that judgment, Earl appeals citing three alleged errors.

First, the appellant argues that there was an error in the instructions given to the jury. It is undisputed in the record that appellant shot and killed his brother-in-law, Paul Bean. The issue in dispute in the case concerned whether or not appellant had acted in self-defense. A self-defense instruction was given. Thereafter, the instruction was limited or qualified in that the jury was told that the appellant was not entitled to a self-defense claim if he:

> . . . began the encounter by first shooting at Paul Bean when he did not believe it to be necessary in order to protect himself from deadly, physical force he believed Paul Bean was then and there about to use upon him . . . ..

Appellant argues that there was no evidence to support this instruction. We have reviewed the record and cannot agree. A review of the record shows that there is much conflicting evidence as to the sequence of events on the date of the shooting which preceded the actual wounding. It was within the jury's prerogative to decide whom to believe as to these details. *Brannon v. Commonwealth*, Ky., 400 S.W.2d 680 (1966). Additionally, appellant argues that the limitation instruction was ambiguous. While the instruction might have been more concise in its language, we believe that it was sufficiently clear to allow the jury to make the determination warranted by the facts in the record.

In support of his position that the instruction on self-protection was erroneous, the appellant also cites, *Pace v. Commonwealth*, Ky., 561 S.W.2d 664 (1978). The appellant argues that in Instruction # 2, the inclusion of the phrase, "and that in so doing he was not privileged to act in self-protection," was inadequate to serve as a complete instruction on the law of self-defense. We would agree with this point, and the Supreme Court's opinion to this effect in *Pace, id.*, is clear. In *Pace, id.*, however, there is no indication that there was any separate instruction on self-defense delivered to the jury. In the case *sub judice*, a specific instruction on self-protection was given, and that instruction constitutes a verbatim reproduction of the sample self-protection instruction contained in Palmore, *Kentucky Instructions to Juries*, § 10.02, p. 342, with the exception of the qualification appended to Instruction # 2 by the trial court. *See also,* Palmore, *supra* at § 10.09, p. 352, 353 and K.R.S. 503.060(3) which provide for such qualification. The qualification appears to be appropriate and allowed the jury to be instructed on the whole law of the case, particularly in regard to self-defense.

Second, appellant objects to an "Allen charge" given by the judge to the jury during a recess of their deliberations. The jury began its deliberations at 11:04 a. m.

At 12:20 p. m., the jury returned and made several inquiries of the court, and then resumed its deliberation at 12:30. At 2:15, the jury returned to the courtroom and reported that they had not reached a verdict. The following then occurred:

THE COURT: Without telling the Court how you have voted, I want you to tell the Court the numerical division.

MR. WELLS: Seven to five.

THE COURT: Do you feel, Mr. Foreman, if you were given additional time to deliberate that you can possibly reach a verdict?

MR. WELLS: It is doubtful, Your Honor. It might change a little bit, but I don't know.

THE COURT: At this point, ladies and gentlemen of the jury, the Court wants to make a remark or two to you in general terms. What I have to say to you should in no way influence your decision for the Commonwealth or for the defendant or against the defendant. But, I would like to point out to you that you are aware that this trial is expensive, both to the Commonwealth and to the defendant. You twelve ladies and gentlemen were chosen by both sides to decide this issue, and I know of no better qualified people to make such a decision as is necessary in this case. I am sure that you realize that it must be decided by someone, either now or in the future. Perhaps if you could return and deliberate a little longer, you could reexamine your views in this case and give every consideration to the opinions of your fellow jurors. With these remarks in mind, I will ask the jury to return to the juryroom and continue your deliberations for awhile longer to see if you are able to reach a verdict. (T.A. 716–17)

Our state's highest court has followed the majority of jurisdictions and approved of "Allen" type instructions and has made it clear that the real concern is whether such an instruction, given during the deliberations, has a coercive effect. As was stated in *Abbott v. Commonwealth,* Ky., 352 S.W.2d 552 (1961), "[t]he ultimate test of coercion is whether the instruction actually forces an agreement on a verdict or whether it merely forces deliberation which results in an agreement." See also *Freepartner v. Rutledge,* Ky., 405 S.W.2d 290 (1966). We believe that the instruction given by the trial court in this case was not coercive in the sense that it forced an agreement on the verdict, or that it would influence the jurors to decide the case for or against the appellant. The language used by the trial judge was clearly addressed to all jurors. We find no hint of coercion toward the minority group. It is important to note that the judge was unaware of the posture of the majority and the minority. The term "Allen charge" derives its meaning from the case of *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In that case, a charge similar to the one in question here was found to be free of prejudicial harm. We find no error in the instruction given to the jury, for we fail to find that it coerced an agreement on the verdict.

Appellant directs this court's attention to the recent decisions of *People v. Gainer,* 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997 (1977), and *U. S. v. Seawell,* 550 F.2d 1159 (9th Cir., 1977). Although both decisions are on point, neither decision is controlling in this action, and both decisions are contrary to recognized Kentucky authority. This court is not disposed to eliminate the use of "Allen" instructions in Kentucky, as the California court did in *Gainer, supra.* Furthermore, we find the facts of *Gainer, supra,* to be distinguishable from the case *sub judice.*

There were two objections to the "Allen" instruction given in *Gainer, supra.* The primary objection, and the one found to be most prejudicial, was an admonition to the minority jurors. The trial court stated,

. . . If much the larger of your panel are for a conviction, a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one, which makes no impression upon the minds of so many men or women equally honest, equally intelligent with himself or her-

self, and [who] have heard the same evidence with the same attention and with an equal desire to arrive at the truth and under the sanction of the same oath. In including such a statement in the instruction, the trial judge directs the jurors to include the position of the majority of jurors in their deliberations. The one or more "hold out" jurors are told that in reaching a conclusion as to whether or not a reasonable doubt exists, they are to weigh not only the arguments and evidence, but also their own status as dissenters, which is a consideration both rationally and legally irrelevant to the issue of guilt. Had such a statement been made by the trial court in the present action, we would find the instruction prejudicial and reversible.

The second point condemned in *Gainer, supra,* is present in this action. That is that the "case must at some time be decided". Although the California court declared that an "Allen" type instruction should never again be read in a California courtroom, it did concede in *Gainer, supra,* 19 Cal.3d at 855, 139 Cal.Rptr. at 872, 566 P.2d at 1008, that, "the statement does not threaten to distort the process of jury decisionmaking to the same degree as the admonition to dissenters. Accordingly, a per se rule of reversal is not required when only this erroneous statement is included in otherwise correct instructions, even if given to a deadlocked jury."

■ Appellant has cited *Seawell, supra,* as supportive of the proposition that a request by the trial court for a jury foreman to reveal its numerical division is reversible error per se. We cannot agree that this was the basis for reversing *Seawell, supra.* The error was in the fact that the trial judge delivered a second "Allen charge" which was found to be too "coercive."

The real question on this appeal is also whether or not the comments of the trial judge were coercive to the point of actually forcing an agreement on a verdict, or whether the comments merely encouraged deliberation which ultimately resulted in an agreement. We conclude that any errors committed by the trial judge were harmless

in this case. His request for information regarding a numerical division was merely for the purpose of determining whether or not there was in fact a deadlock and the extent of the deadlock. He was unable to determine from his question in which way the deadlock existed and which side was in the minority. It would be preferable to omit an implication that a hung jury would require an expensive retrial of the case. This is not necessarily true, but we do not find this fact to be reversible error in this case. We do not find the trial court's comment that "you could reexamine your views in this case and give every consideration to the opinions of your fellow jurors" to be at all like the admonition given in *Gainer, supra,* which would necessarily encourage jurors to consider the numerical division or the weight of opinion among the jurors in forming or reexamining the views of minority jurors to conform with the majority to reach a decision.

■ Third, appellant argues that the participation of private counsel employed by the victim's family in the prosecution of the appellant was prejudicial error. We disagree.

The record clearly shows that the privately employed attorney simply assisted the Commonwealth's attorney. He in no way exclusively assumed the Commonwealth's attorney's role. A line of early cases in this Commonwealth held that privately employed attorneys may participate in trial of the Commonwealth's cases if done with the assent of the Commonwealth's attorney. See *Catron v. Commonwealth,* 140 Ky. 61, 130 S.W. 951 (1910); *Tackett v. Commonwealth,* 227 Ky. 249, 12 S.W.2d 289 (1928); and *Fields v. Commonwealth,* 225 Ky. 655, 9 S.W.2d 990 (1928). Indeed, as early as 1864, the state's highest court held that the employment of private counsel to assist the public official was not against public policy. *Price v. Caperton,* 62 Ky. 207 (1864). Although the arguments against this tradition were not apparently the same there, in *Goehring v. Commonwealth,* Ky., 370 S.W.2d 822 (1963), the Court of Appeals again acknowledged that the rule in this

state was that the family of a victim could employ an attorney to assist the Commonwealth's attorney. We are not persuaded that there is sufficient argument for changing the rule.

The judgment of the circuit court is affirmed.

All concur.