**Erick Orlando LOCKS, Petitioner-Appellant,**

v.

**G.W. SUMNER, Warden, California State Prison at San Quentin, Respondent-Appellee.**

**No. 82–5508.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 3, 1983.

Decided April 5, 1983.

---

Gregory Alarcon, Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Charles M. Sevilla, Los Angeles, Cal., for petitioner-appellant.

Before ANDERSON and FARRIS, Circuit Judges, and SOLOMON,[*] District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Erick Locks appeals the denial of his petition for habeas corpus. He argues that his California conviction on two counts of murder is constitutionally tainted for three reasons: (1) The state trial judge improperly asked the jury foreman about the results of the jury's balloting; (2) his Sixth Amendment right to counsel was violated by the refusal of the trial judge to appoint advisory counsel; and (3) the trial court failed to

---

[*] The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

suppress illegally seized evidence. We affirm.

## I. BACKGROUND

In 1976, Locks pled not guilty to two counts of first-degree murder brought in California state court. As will be discussed more thoroughly below, Locks requested he be allowed to proceed *in propria persona* with his appointed attorney acting as co-counsel. After the state trial judge denied the request to proceed in such fashion, Locks voluntarily waived his right to counsel, dismissed his appointed counsel, and proceeded on his own. Just before trial began, Locks renewed his request for additional counsel. The exact nature of his request is in dispute: Locks argues he requested either co-counsel or, in the alternative, advisory counsel; the State of California asserts that Locks was simply renewing his request for co-counsel. The judge indicated that he would be glad to call Locks' original counsel back to try the case. Locks declined the offer, stating he wanted to represent himself as well. The judge denied the request.

During the jury deliberations and just before excusing the jury for the weekend, the trial judge asked the foreman what the numerical division of the jury was at its last ballot.[1] After convening the next Monday, the jury returned a guilty verdict on both counts of murder.

Locks appealed the conviction to the California Court of Appeals. With one justice dissenting, the court affirmed the judgment in an unpublished decision. A petition for rehearing before the same court was denied. Locks then filed a petition for rehearing before the California Supreme Court. The petition was denied, as was his subsequent petition for certiorari before the United States Supreme Court.

In 1980, Locks filed his original petition for habeas corpus before the United States District Court for the Central District of California. It was dismissed for failure to exhaust state remedies on the jury inquiry issue. Locks then returned to the California appellate courts and requested hearings on that issue. The requests were denied.

The petition for habeas relief which forms the basis of this appeal was filed April 8, 1981. On April 6, 1982, the district court, David V. Kenyon presiding, entered judgment against Locks on the recommendation of Magistrate Venetta S. Tassopulos. Locks filed a timely notice of appeal.

## II. DISCUSSION

As indicated, Locks asserts that three constitutional violations taint his conviction: the trial judge's inquiry of the jury; the failure to appoint advisory counsel; and the failure to suppress illegally seized evidence. The jury inquiry issue, being of first impression in this circuit, presents the most substantial question on appeal. The other two issues admit of easier resolution.

### A. *Inquiry into the Jury's Numerical Division*

The text of the inquiry by the trial judge is reproduced in footnote 1. At first glance, the question would appear harmless. Nonetheless, an inquiry such as this was held by the Supreme Court to be prejudicial *per se* and ground for reversal in *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). The rationale of the Court's holding was that such questioning serves no useful purpose but has a general tendency to coerce. 272 U.S. at 450, 47 S.Ct. at 135, 71 L.Ed. at 346. Recently this court has held that such an inquiry is plain error. *United States v. Noah,* 594 F.2d 1303, 1304 (9th Cir.1979). *Brasfield* and *Noah,* however, involved the propriety of making this inquiry in federal trials. Neither the Supreme Court nor this circuit has held that the rule in *Brasfield* is a necessary component of one's Sixth Amendment right to an impartial jury, applicable to the state courts by virtue of the Fourteenth Amend-

---

1. The trial judge who made the inquiry was temporarily sitting in for the judge who had heard the case and was ill that day. The inquiry went as follows:

Court: "I say, just on a numerical basis only without telling me how many for one side or how many for another, can you give me the standing of the jury at the last ballot."

Foreman: "They were eight on one position, three on another and one on another."

R.T. at 688–689. The jury was then excused for the weekend.

ment. Locks, of course, believes the rule should be just that. The state counters that the holding in *Brasfield* was merely an exercise of the Supreme Court's supervisory power over the conduct of federal trials. The district court, adopting the magistrate's recommendation, agreed with the state.

Locks' strongest support for his argument is the language in *Brasfield,* in which Justice Stone stated: "We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal." 272 U.S. at 450, 47 S.Ct. at 135, 71 L.Ed. at 346. While this language does appear to have constitutional underpinnings, three circuit courts of appeals have found *Brasfield* to involve only a supervisory rule, not a constitutional mandate.[2] *Ellis v. Reed,* 596 F.2d 1195 (4th Cir.), *cert. denied,* 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979); *Cornell v. Iowa,* 628 F.2d 1044 (8th Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981); *United States ex rel. Kirk v. Director, Department of Corrections,* 678 F.2d 723 (7th Cir.1982).

■ All three circuit courts relied on *Burton v. United States,* 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905), to temper the strong language used in *Brasfield.* In *Burton* the court first announced the rule that trial judges should not make inquiries into jury balloting. This statement was, however, dicta. Subsequent to *Burton,* the federal courts still differed on whether an inquiry into the division of the jury was *per se* reversible error. In *Brasfield* Justice Stone made it clear that the Court meant what it had said and the failure of some of the lower federal courts to follow *Burton's* dicta arguably led to the emphatic language he used. *Ellis,* 596 F.2d at 1198; *Cornell,* 628 F.2d at 1047; *Kirk,* 678 F.2d at 726. These circuit courts also found support for their position in the language in *Burton* in which the court stated: "[W]e do not think that the proper administration of the law

requires such knowledge or permits such a question on the part of the presiding judge." 196 U.S. at 308, 25 S.Ct. at 250, 49 L.Ed. at 491. Relying on this language, and the relationship of *Burton* to *Brasfield,* these circuit courts concluded the rule was only supervisory in nature.

We agree with our fellow circuit courts. Recently, the Supreme Court has held that the federal rule governing the time at which double jeopardy attaches in a jury trial is binding upon the states. *Crist v. Betz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The issue, in the words of Justice Stewart, was "whether the federal rule is an integral part of the constitutional guarantee." 437 U.S. at 32, 98 S.Ct. at 2159, 57 L.Ed.2d at 29. We are not persuaded that the rule in *Brasfield* is integral to either one's right to an impartial jury or, more generally, a fair trial. Justice Stone recognized that the effect of inquiring into the status of jury balloting "will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive." *Brasfield,* 272 U.S. at 450, 47 S.Ct. at 135, 71 L.Ed. at 346. "But, while this difficulty in determining actual prejudice may make an outright ban on the inquiry itself entirely reasonable, it does not make such a rule constitutionally mandated." *Kirk,* 678 F.2d at 727.

■ Although we decline to hold that the rule in *Brasfield* is of constitutional dimension, we do not wish to imply that an inquiry into the jury's balloting will never infringe on a defendant's right to an impartial jury and fair trial. This would occur if the trial judge's inquiry would be likely to coerce certain jurors into relinquishing their views in favor of reaching a unanimous decision. *Cornell,* 628 F.2d at 1048; *Kirk,* 678 F.2d at 727; *see also United States v. Akbar,* 698 F.2d 378, 380 (9th Cir.1983). To determine whether such coercion of the jury's deliberative process occurred, the in-

---

**2.** For a discussion of the split among the state courts on the question whether an inquiry into the jury's balloting is *per se* reversible error, see *Annot.,* 77 A.L.R.3d 769 (1977). In fact, the California courts see nothing inherently wrong with such an inquiry. *See, e.g., People v. Carter,* 68 Cal.2d 810, 69 Cal.Rptr. 297, 442 P.2d 353 (1968).

quiry by the judge must be viewed in light of the context in which it was made, not in isolation. *Ellis,* 596 F.2d at 1200; *see Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973) (The Court declined to decide that the use of an instruction stating that every witness is presumed to tell the truth is *per se* constitutional error; instead it must be viewed in the context of all the instructions to determine whether the defendant was deprived of a fair trial); *see also Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957, 958 (1965). Here, the circumstances in which the inquiry was made do not persuade us that the jury was in any way coerced: The jury was about to be dismissed for the weekend and the judge may have been wondering whether it was close to agreement, making it best to continue deliberations; he made a simple and, on its face, uncoercive inquiry; he did not ask whether the jurors in the majority were for acquittal or a guilty verdict; the judge did not follow the inquiry with any statement imploring the jury to come to a decision; and the jury was not sent back to continue deliberations, but was dismissed for the weekend. We therefore affirm the district court on this issue.

### B. *Right to Advisory Counsel*

Locks waived his right to counsel after he became dissatisfied with his court-appointed attorney and the trial judge refused his request to either appoint substitute counsel or to allow him to proceed *in propria persona* with his court-appointed attorney acting as co-counsel. R.T. 41–42. Just before trial, Locks renewed his request for hybrid representation; this time, however, he requested the assistance of co-counsel *or* advisory counsel. R.T. 141–142. While the record is not entirely clear in this regard, we assume for the purposes of this opinion that Locks did request the aid of advisory counsel.

█ Locks does not argue that his waiver of his right to counsel was invalid for some reason. Instead, he argues that it was unconstitutional error for the trial court to have failed to appoint advisory counsel when he so requested. Locks frames his argument in terms of a denial of the right to advisory counsel apparently on the recognition that this court has held that a *pro se* defendant has no absolute right to the aid of co-counsel. In *United States v. Halbert,* 640 F.2d 1000, 1009 (9th Cir.1981), it was held that the appointment of co-counsel to aid a *pro se* defendant is within the discretion of the trial court. *See also United States v. Klee,* 494 F.2d 394, 396–397 (9th Cir.), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974). Importantly, co-counsel and advisory counsel are terms that have gained distinct meanings. Advisory counsel is generally used to describe the situation when a *pro se* defendant is given technical assistance by an attorney in the courtroom, but the attorney does not participate in the actual conduct of the trial. In the co-counsel situation, the attorney may participate directly in the trial proceedings with the defendant (examining witnesses, objecting to evidence, etc.). The Supreme Court and this circuit have recognized the efficacy of hybrid representation to aid *pro se* defendants and protect the integrity of the trial process. *Mayberry v. Pennsylvania,* 400 U.S. 455, 467–68, 91 S.Ct. 499, 505–06, 27 L.Ed.2d 532, 541 (1971) (Burger, C.J., concurring); *Faretta v. California,* 422 U.S. 806, 834–35 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562, 581 (1975); *United States v. Kimmel,* 672 F.2d 720, 721 (9th Cir.1982); *United States v. Coupez,* 603 F.2d 1347, 1351 (9th Cir.1979); *see United States v. Odom,* 423 F.2d 875, 876 (9th Cir.1970). Neither court has decided, though, that a *pro se* defendant has an absolute right to advisory counsel. The Tenth Circuit has held that the right to "standby" counsel,[3] a type of advisory counsel, is not absolute, but is within the sound discretion of the trial judge. *United States v. Gigax,* 605 F.2d 507, 516–517 (10th Cir.1979).

---

3. "Standby" counsel refers to the situation where a *pro se* defendant is given the assistance of advisory counsel who may take over the defense if for some reason the defendant becomes unable to continue. *See Mayberry, supra; United States v. Kelley,* 539 F.2d 1199, 1201, n. 3 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976).

We agree with the Tenth Circuit. If the right to co-counsel is not of constitutional dimension, *Halbert,* 640 F.2d at 1009, we fail to see why the right to advisory counsel should be afforded higher status. The decision to allow a defendant to proceed with either form of hybrid representation is best left to the sound discretion of the trial judge. *See Coupez,* 603 F.2d at 1351. Locks does not contend that the trial court judge abused his discretion in failing to allow some form of hybrid representation. Instead, he asserts that he made errors in the conduct of his self-representation. That, however, is the substantial risk he takes when he elects to waive his right to counsel. *See United States v. Trapnell,* 512 F.2d 10, 12 (9th Cir.1975) ("A defendant representing himself cannot be heard to complain that his Sixth Amendment rights have been violated.") We affirm the district court on this issue.

### C. *Fourth Amendment Claim*

Locks also contends that evidence obtained in an illegal search was improperly admitted at his trial. This claim falls squarely within the rule of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In *Stone,* the Supreme Court held that Fourth Amendment claims are not cognizable in habeas proceedings. Nonetheless, Locks argues that an exception to the rule of *Stone* applies because he did not receive a full and fair hearing on his Fourth Amendment claim. He asserts that the exception applies because the California Court of Appeals considered evidence not offered at the suppression hearing when it upheld the search of his car. Locks cites *Mack v. Cupp,* 564 F.2d 898 (9th Cir.1977), in support of this argument.

*Mack,* however, dictates an opposite result. When faced with the similar argument that a habeas petitioner's Fourth Amendment claims should be heard because the state appellate court improperly considered facts not in the record, the court stated: "[T]he court's mistaken recitation of the facts, even assuming *arguendo* that it resulted in an incorrect decision, is not enough in and of itself to establish that Mack's claims were not fully and fairly considered." 564 F.2d at 902. Also, as noted in *Mack,* one of the appeals rejected in *Stone* involved the issue of an appellate court improperly upholding a warrant by considering facts not in the affidavit. *Stone,* 428 U.S. at 473, 96 S.Ct. at 3042 n. 3, 49 L.Ed.2d at 1075, n. 3.

Locks' Fourth Amendment argument must therefore fail. He litigated the search and seizure issue before the trial court and the appellate court. Quite clearly, the appellate court considered it in depth. He petitioned for rehearing on the issue of the appellate court looking outside the suppression hearing to find support for the search. Apparently, the issue was also raised in his petition before the California and the United States Supreme Courts. We have no difficulty concluding that Locks received a full and fair consideration of his Fourth Amendment claim and therefore he is precluded from reraising it in his habeas petition.

### III. CONCLUSION

The judgment of the district court refusing Locks' petition for habeas corpus is

AFFIRMED.