**R.B. WILLIAMS, Petitioner-Appellant,**

v.

**Al C. PARKE, Warden, et al., Respondents-Appellees.**

No. 82–5586.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 10, 1983.

Decided Aug. 16, 1984.

Rehearing and Rehearing En Banc Denied Nov. 6, 1984.

Charles E. King (argued), Louisville, Ky., for petitioner-appellant.

Steven Beshear, Atty. Gen., David K. Martin (argued), Asst. Atty. Gen., Frankfort, Ky., for respondents-appellees.

Before CONTIE and WELLFORD, Circuit Judges, and MORTON, District Judge.*

WELLFORD, Circuit Judge.

In *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), the Supreme Court approved the use of a supplemental charge—typically referred to as an *Allen* charge—to encourage jurors to consider further their tentative positions during deliberations in criminal trials. This appeal involves the propriety of such a supplemental charge in petitioner's trial in state court during jury deliberations. Petitioner sought review of the charge by petitioning the federal district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] The court denied the petition, and

---

* The Honorable L. Clure Morton, Chief Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

1. At trial, petitioner failed to object to the supplemental instruction. Because the state appellate courts reached the merits of petitioner's *Allen*-charge claim rather than denying review on a procedural ground, however, *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d

594 (1977), poses no obstacle to review of the claim in this federal habeas proceeding. *See, e.g., Hockenbury v. Sowders*, 620 F.2d 111, 115 (6th Cir.1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981); *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir.), *cert. denied*, 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979); *cf. United States v. Markey*, 693 F.2d 594, 597 (6th Cir.1982) (in federal trial where no objection made, review *Allen* charge for plain

this appeal ensued. The judgment is affirmed.

R.B. Williams, the petitioner, was tried by a jury in a Kentucky state court for murder in connection with the death of Richard Torian. The evidence established that petitioner shot and killed Torian with a pistol as charged in the indictment. Petitioner contended, however, that the shooting was in self-defense. Petitioner testified that there was "bad blood" between petitioner and Torian stemming from their romantic interests in the same woman, Vanessa Thomas. The confrontation in which the shooting occurred followed an altercation between petitioner, Torian, and Torian's brother in which Richard Torian beat and kicked petitioner. After the fight, Thomas told petitioner that she had noticed a gun handle protruding from Torian's belt. Two days later, petitioner again encountered Torian. Petitioner claimed that Torian made a sudden move as if to draw a gun, causing petitioner to fear for his life. Petitioner, himself armed, drew a gun and shot Torian in the chest three times. Only petitioner's gun was ever located.

The jury began its deliberations at about 3:20 p.m. on the day the trial had begun. At 5:05 p.m., the jury returned to report difficulty. The following dialogue took place:

Judge: Do you have an inquiry which you wish to make of the Court, Ladies and Gentlemen?

Mr. Jerry Almy—One of the Jury: Yes, sir, Judge.

Judge: All right. What is it?

Almy: Judge, we are far apart on our decision. We want to know the procedure, of what we are going to have to do. Do we go back to try and—we are kinda far apart on the numbers so ...

Judge: Well, let me ask you this question: Now, don't tell who, or how many or for what, but just tell me numerically how you are divided, such as 7–3 or ...

Almy: 7–5.

Judge: Well, you have been out about 10 minutes short of 2 hours. Do you think if you had a chance to deliberate a little longer that you might reach some kind of verdict in the case?

Almy: We can try.

Judge: Well, I will let you try a little longer.

Let me read to you this instruction too which the Court is authorized to read in this kind of case.

Now on the trial of this case what I want to say to you should in no way influence your decision either for or against the Commonwealth or for against [sic] the defendant but I want to merely point out to you that this trial is expensive, both upon the Commonwealth and the defendant. You twelve (12) people have been chosen to decide this issue and I know of no better qualified persons to make the decision. You realize that this issue must be decided by someone either now or in the future and perhaps after further deliberation you can reevaluate your decision and opinion in the case and also consider the opinion and the position of your fellow jurors.

With this in mind, I am now resubmitting the case to you to see if you can reach a verdict.

Take the instructions and retire to the jury room and see if you can reach a verdict. If you can't return back into the court and we will discuss the matter further.

Thank you.

At 5:32 p.m., less than 30 minutes after the supplemental charge, the jury returned a unanimous guilty verdict. On appeal, the Kentucky appellate courts affirmed petitioner's conviction.

 In *Allen,* the Supreme Court approved a supplemental charge to the effect that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict

error); *United States v. Giacalone,* 588 F.2d 1158, 1167 (6th Cir.1978) (same), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045

(1979); *United States v. LaRiche,* 549 F.2d 1088, 1092 (6th Cir.) (same), *cert. denied,* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977).

of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Allen,* 164 U.S. at 501, 17 S.Ct. at 157. In *United States v. Scott,* 547 F.2d 334 (6th Cir.1977), this court recognized the usefulness of *Allen* charges. It noted, however, that variations from the charge approved in *Allen* "imperil[ ] the validity of the trial." *Id.* at 337. While this requirement that federal trial courts "hew closely to the language used in the original *Allen* charge" is justified as an exercise of this court's supervisory powers to avoid the difficult "task of weighing the prejudicial impact of a variation of the approved charge," *id.* at 336–37 (quoting *United States v. Flannery,* 451 F.2d 880, 883 (1st Cir.1971)); *see Salemme v. Ristaino,* 587 F.2d 81, 89 (1st Cir.1978), that task must be confronted in a case such as this arising in the state courts, *see id.* The appropriate constitutional inquiry asks whether "in its context and under all the circumstances" the *Allen* charge was "coercive." *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965) (per curiam); *see Jones v. Norvell,* 472 F.2d

1185, 1186 (6th Cir.) (per curiam), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2275, 36 L.Ed.2d 964 (1973). "The speed with which a jury may reach a verdict following the giving of the charge cannot be considered" in determining whether the charge was coercive. *United States v. Giacalone,* 588 F.2d 1158, 1168 (6th Cir.1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979).[2]

The *Allen* charge in this case, while less than ideal, nevertheless was not under the totality of the circumstances sufficiently coercive to deprive petitioner of his constitutional rights. In at least one important respect, the *Allen* charge here was less coercive than the charge approved in *Allen* itself. In *Allen,* the trial court had specifically singled out the minority in urging further consideration of the case. A major criticism of the *Allen* charge focuses on "its potentially coercive effect on minority jurors." *Salemme,* 587 F.2d at 89. In this case, on the other hand, the trial judge did not single out the minority. He simply urged all the jurors to "consider the opinion and the position of your fellow jurors." The request applied to jurors in the majority as well as those in the minority.

Likewise, the charge given here did not suggest that the jury was required to agree. The trial judge alluded to the possibility that a new jury might be necessary and also told the jury to return to court if agreement could not be reached. This case is therefore distinguishable from *Jenkins,* in which the Supreme Court disapproved an *Allen* charge in which the jury was told, "You have got to reach a decision in this case." 380 U.S. at 446, 85 S.Ct. at 1060. The jurors' right to continue disagreeing was implicit in the charge here.

Furthermore, this case does not involve a jury minority that, by virtue of its lengthy service, might be thought particularly susceptible to coercion. The trial of this case

---

**2.** Once an *Allen* charge is found coercive, the length of time between the giving of the charge and the rendering of the verdict becomes relevant to determine whether the defendant has been prejudiced by the giving of the coercive charge, *Giacalone,* 588 F.2d at 1168; *Scott,* 547

F.2d at 337; *cf. Jones,* 472 at 1185–86 (time lapse mentioned without sharply distinguishing between coercive tendency and prejudice); *United States v. Harris,* 391 F.2d 348, 356 (6th Cir.) (same), *cert. denied,* 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145 (1968).

took less than a day, and the jury had been deliberating for less than two hours when the *Allen* charge was given. On the other hand, the trial in *Scott* spanned four days, and the jury had deliberated over eight hours before the *Allen* charge was given. 547 F.2d at 335–36. In *United States v. Harris*, 391 F.2d 348, 351 (6th Cir.), *cert. denied*, 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145 (1968), over five hours of deliberation took place at the conclusion of a three-day trial before the challenged charge was given.

Petitioner points to three aspects of the charge here to justify issuance of the writ.[3] His arguments derive from this court's rejection of *Allen* charges in three cases— *Jones, Harris,* and *Scott.*[4] Because *Harris* and *Scott* involved direct federal criminal appeals,[5] they could be explained as turning on this court's exercise of its supervisory powers over the lower federal courts. *See supra* pp. 849–850.[6] All three cases are otherwise distinguishable as well.

In *Scott*, as in this case, the trial court's charge did not expressly remind jurors of their continuing right to disagree. The court stated, "The reminder that no juror should merely acquiese in the majority opinion is ... one of the most important parts of the *Allen* charge." 547 F.2d at 337. The jury in *Scott*, however, had served considerably longer prior to the *Allen* charge than had the jury here. *See supra* pp. 850–51. Unlike this case, the judge in *Scott* stressed the increased workload for the judge and increased delay for other litigants should the jury be unable to agree. *See* 547 F.2d at 337–38.

■ In *Jones*, a habeas case, this court criticized a state judge's inquiry into the numerical breakdown of a deadlocked jury. *See* 472 F.2d at 1186. That the trial judge here likewise inquired, unwisely from our viewpoint, as to the jury count nevertheless does not mandate issuance of the writ. While such an inquiry in federal court requires reversal even when the judge does not determine which side the majority favors and defense counsel raises no objection, *see Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), four circuits have held that this *per se* rule does not apply on review of state court instructions, *see Locks v. Sumner,* 703 F.2d 403, 405–07 (9th Cir.1983) (citing *United States ex rel. Kirk v. Director, Dep't of Corrections,* 678 F.2d 723 (7th Cir.1982); *Cornell v. Iowa,* 628 F.2d 1044 (8th Cir. 1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981); *Ellis v. Reed,* 596 F.2d 1195 (4th Cir.), *cert. denied,* 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979)), *cert. denied,* — U.S. —, 104 S.Ct. 338, 78 L.Ed.2d 307 (1984). In *Jones* itself, this court did not rest solely on the judge's inquiry into the numerical breakdown of the jurors, but rather examined the judge's instructions under the "totality of circumstances." 472 F.2d at 1186; *see also Locks,* 703 F.2d at 406–07. Unlike this case, in *Jones* the trial judge determined not only the jury breakdown, but also the majority's inclination. *See* 472 F.2d at 1185. The judge in *Jones* also wrongly

---

**3.** Petitioner has not argued that the trial court's reference to the financial consequences of retrial invalidates the charge. *See Kawakita v. United States,* 190 F.2d 506, 524 n. 17 (9th Cir. 1951) (*Allen* charge referring to expense of trial not coercive), *aff'd,* 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249 (1952); *Giacalone,* 588 F.2d at 1166–67 & n. 10 (*Allen* charge in *Kawakita* has been implicitly approved by the Supreme Court), *Compare Harris,* 391 F.2d at 354–55 (dicta) (questioning such language) *with Giacalone,* 88 F.2d at 1167 (such language did not constitute plain error).

**4.** See also *Giacalone* and *United States v. LaRiche,* 549 F.2d 1088 (6th Cir.), *cert. denied,* 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977), in

both of which this court found no plain error in *Allen* charges to which objections had not been raised. Both cases recognize the distinction between telling a jury a case must be "decided" instead of being "disposed of." *See Giacalone,* 588 F.2d at 1167 n. 11; *LaRiche,* 549 F.2d at 1092. *LaRiche* also notes the importance of informing the jury of its continuing right to disagree. *See id.* at 1092–93.

**5.** *Jones* was a habeas proceeding.

**6.** Even in cases involving federal trials, this court has never held that any single substantive variation from the original *Allen* charge inevitably requires reversal. *See infra* pp. 851–852.

asserted that the twelve people of the jury "are the only ones" who could reach a verdict in the case, thus appearing to assert the impossibility of retrial. *Id.*

In *Harris*, this court disapproved an *Allen* charge in which the trial judge instructed the jury that the case would have to be "decided" sometime rather than "disposed of" sometime. 391 F.2d at 355–57. The state court here likewise stated that this case "must be decided." Unlike this case, however, the charge in *Harris* expressly directed the minority to consider the majority's views. *See id.* at 352–53.

■ The supplemental instruction given here is not one that we approve as fully addressing all the concerns expressed in cases coming to us on direct appeal. Viewing the totality of the circumstances, however, we cannot say that the instruction was so coercive as to deprive petitioner of his constitutional rights. Accordingly, the district court's judgment denying the petition for a writ of habeas corpus is AFFIRMED.

CONTIE, Circuit Judge, dissenting.

Although I agree with the majority that the issue in this case is whether the *Allen* charge given by the Kentucky trial judge was coercive under the totality of the circumstances, *see Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965), I do not agree that the version of the *Allen* charge used here comports with the defendant's sixth amendment right, as made applicable to the states by the fourteenth amendment, to a fair trial. Accordingly, I dissent.

My disagreement with the majority stems primarily from its application of relevant Sixth Circuit case law. Although no prior Sixth Circuit decision has considered an *Allen* charge identical to the one at issue, those cases identify several elements often present in variations of the *Allen* charge which, in combination with each other and when viewed under all the circumstances, can render these charges coercive.

It should be emphasized that it is the combined effect of these elements, rather than the presence or absence of any one element, that determines whether a particular version of the *Allen* charge is constitutionally sound.

First of all, the trial judge in this case instructed the jury that the defendant's guilt or innocence *"must be decided* by someone either now or in the future" (emphasis supplied). This court has twice criticized this type of instruction and has distinguished it from statements to the effect that a case *"must be disposed of* sometime" (emphasis supplied). *See United States v. LaRiche*, 549 F.2d 1088, 1092 (6th Cir.), *cert. denied*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 383 (1977); *United States v. Harris*, 391 F.2d 348, 355–56 (6th Cir.), *cert. denied*, 393 U.S. 874 (1968).

In *Harris*, the court held that instructing a jury that a criminal case "must be decided" is inaccurate because the jury receives the impression that ultimate inability to agree is an unacceptable result. 391 F.2d at 355. In fact, the federal constitution entitles "a defendant to rely on the possibility of disagreement by the jury." *Id.* The majority counters that since the trial judge in the present case "alluded to the possibility that a new jury might be necessary and also told the jury to return to court if agreement could not be reached," the version of the *Allen* charge given here "did not suggest that the jury was required to agree." *Ante* at 850. The majority overlooks the fact, however, that although similar allusions were made by the trial judge in *Harris*, 391 F.2d at 351, 353, the instruction that the case "must be decided" nevertheless was held constitutionally unsound.

Furthermore, the *Harris* court found that instructing a jury that a case "must be decided" tends to pressure minority jurors into surrendering conscientiously held opinions about the ultimate verdict for the sake of reaching unanimous agreement. *Id.* at 356. Contrary to the majority's assertion, *ante* at 850, therefore, the fact that the

trial judge did not expressly admonish the minority jurors to reconsider their position in light of their minority status is not of central importance under the circumstances of this case. The *Harris* court specifically held that an instruction that a matter "must be decided" pressures minority jurors to forsake conscientiously held convictions concerning the proper verdict.

Second, it is noteworthy that the version of the *Allen* charge used here, unlike the original *Allen* instruction, failed to instruct the jurors not to surrender conscientiously held convictions about what would be the correct verdict merely to obtain unanimity *if* some jurors remained convinced of their opinion after open-mindedly reconsidering their position. This court has held that "the reminder that no juror should merely acquiesce in the majority opinion is ... one of the most important parts of the *Allen* charge." *United States v. Scott*, 547 F.2d 334, 337 (6th Cir.1977). This reminder may be necessary in order to protect the defendant's "right to rely on the fact that an ultimate jury disagreement is a permissible result of a trial." *Id.* As has been indicated, this court afforded the latter interest constitutional status in *Harris*. 391 F.2d at 355.

A third problem with the *Allen* charge under review here is that immediately before it was given, the trial judge asked how the jury was numerically divided and was informed by juror Almy that the count was 7–5. Although I agree with the majority that eliciting the numerical division of a deadlocked jury, without more, is not reversible error in habeas cases, it is equally clear that such an inquiry and response, when proceeded by an *Allen* charge, can result in constitutional error under the totality of the circumstances test. *See, e.g., Locks v. Sumner*, 703 F.2d 403, 406–07 (9th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983); *Ellis v. Reed*, 596 F.2d 1195, 1199–1200 (4th Cir.), *cert. denied*, 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979). Though finding no constitutional error under the facts of the particular case, the Eighth Circuit stated in *Cornell v. State of Iowa*, 628 F.2d 1044, 1048 n. 2 (8th Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981):

> The coercive impact of even a modest *Allen* charge is heightened when preceded by any inquiry as to the jury's numerical division. When that is done, the impression is inherently conveyed to the jury that the relevation of their division prompted the giving of the subsequent verdict-urging instruction and that it is, therefore, directed toward the minority jurors.

This coercion of minority jurors can only be compounded where, as here, elicitation of the jury's numerical division is immediately followed by a suspect *Allen* charge. *See Jones v. Norvell*, 472 F.2d 1185, 1186 (6th Cir.), *cert. denied*, 441 U.S. 986, 93 S.Ct. 2275, 36 L.Ed.2d 964 (1973).

Fourth, I do not agree with the majority that a relatively short trial and period of deliberations necessarily renders a jury unsusceptible to coercion. Indeed, this court has held that any time that a jury notifies a trial judge that it has been unable to reach a verdict, the trial judge must be:

> acutely sensitive to the probability that the jurors will listen to his additional instructions with particular interest and will rely more heavily on such instructions than on any single portion of the original charge.

*United States v. Giacalone*, 588 F.2d 1158, 1166 (6th Cir.1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979) (quoting *United States v. Carter*, 491 F.2d 625, 633 (5th Cir.1974)). Consequently, despite the fact that the trial in the present case took less than a day and that the jury deliberated for less than two hours before reporting itself deadlocked, the jury may have accorded special weight to the version of the *Allen* charge given here.

In summary, I would hold that the combination of instructing the jury that this case

must be decided, of eliciting the numerical division of the jury and of failing to instruct the jurors on their duty not to surrender conscientiously held convictions deprived the defendant of his constitutional right to a fair trial.[1] The case law establishes that the first two factors pressured the jurors (particularly the minority jurors) to forsake any conscientiously held opinions in order to reach a unanimous verdict. This coercion was not offset by an instruction not to surrender those convictions.[2]

Finally, I am convinced that the constitutional error occurring in this case was not harmless. First, within 27 minutes after the trial judge gave the *Allen* charge, either five or seven of the jurors changed their minds [3] and the jury returned a guilty verdict. Although the speed with which a jury reaches a verdict after an *Allen* charge is given may not be considered in determining whether that charge was coercive, the elapsed time is relevant in deciding whether an *Allen* charge otherwise found improper may be deemed harmless. *See Giacalone*, 488 F.2d at 1167–68. Moreover, Williams' claim of self-defense was not insubstantial. The record shows, for instance, that the defendant had been physically beaten by Richard Torian two days before the shooting and had been told by Vanessa Thomas that Torian had been armed. If a jury were further to believe Williams' testimony that the second encounter with Torian was a surprise and that Torian moved suddenly as if to draw a gun, then that jury could conclude under all the circumstances that Williams acted reasonably in self-defense. Thus, the trial court's error was not harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). I respectfully dissent.

1. The Kentucky Court of Appeals approved an *Allen* charge that was indistinguishable from the one used here in *Earl v. Commonwealth,* 569 S.W.2d 686 (Ky.App.1978). I am of the opinion that the *Earl* case was wrongly decided.

2. Whether such an instruction would have sufficed to counterbalance the pressure exerted by

the other two factors is a question that I do not reach.

3. The trial judge did not elicit whether the 7–5 numerical division favored conviction or acquittal.