RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0289P (6th Cir.)
File Name: 01a0289p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

JEROME HENDERSON,
    *Petitioner-Appellee/*
    *Cross-Appellant,*

        Nos. 99-4046/4088

    *v.*

TERRY L. COLLINS, Warden,
    *Respondent-Appellant/*
    *Cross-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 94-00106—S. Arthur Spiegel, District Judge.

Argued: January 23, 2001

Decided and Filed: August 28, 2001

Before: NORRIS, BATCHELDER, and CLAY, Circuit
Judges.

―――――――――――

**COUNSEL**

**ARGUED:** Matthew C. Hellman, OFFICE OF THE
ATTORNEY GENERAL, Columbus, Ohio, for Appellant.
Harry R. Reinhart, Columbus, Ohio, for Appellee.
**ON BRIEF:** Jonathan R. Fulkerson, Stuart A. Cole, OFFICE

1

OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellant. Harry R. Reinhart, David C. Stebbins, Columbus, Ohio, for Appellee.

NORRIS, J., delivered the opinion of the court, in which BATCHELDER, J., joined. CLAY, J. (pp. 14-38), delivered a separate dissenting opinion.

————————

**OPINION**

————————

ALAN E. NORRIS, Circuit Judge. In this capital case, the State of Ohio, representing Warden Terry Collins, appeals from an order of the district court conditionally granting Jerome Henderson's petition for a writ of habeas corpus as to his death sentence. *See* 28 U.S.C. § 2254. For his part, petitioner cross-appeals from the denial of the writ with respect to his guilt.

After careful review of the many issues raised by petitioner in his cross-appeal, we conclude that the district court properly denied relief. Accordingly, we affirm the order of the district court as to the issues raised on cross-appeal. *Henderson v. Collins*, 101 F. Supp. 2d 866 (S.D. Ohio 1999). Because the order of the district court was particularly thorough and well-reasoned, any opinion that we might issue concerning the issues raised by petitioner in his cross-appeal would be duplicative and serve no useful purpose.

At the same time, we must reverse the district court's conditional grant of the writ with respect to petitioner's sentence.

**I.**

The facts that gave rise to petitioner's prosecution have been summarized by the Ohio Supreme Court and need not be

## III.  Conclusion

I would affirm the district court's order granting the writ of habeas corpus in Case No. 99-4046.  In accordance with this opinion, I would also reverse the district court's order denying the writ in Case No. 99-4088.

For the reasons set forth above, I respectfully dissent.

repeated here.  *See State v. Henderson*, 39 Ohio St. 3d 24, 24-25, 528 N.E.2d 1237, 1238-40 (1988).

The only issue on which the district court granted relief concerns an *Allen* charge[1] given to the jury by the trial court after it reported a deadlock.  The jury began its deliberation in the penalty phase of the trial at 12:30 p.m. on Wednesday, July 24, 1985.  At 1:22 p.m. the next day, the jury sent the following message to the court: "We are deadlocked, period." In response, the court instructed the jury in these terms:

> You all know that for the purpose of returning a verdict at this time all twelve of you must agree.  And you have a duty to agree, if it is at all possible.

> Now when you talk to each other in that jury room, obviously each one of you should pay the proper respect to the other person's opinion.  And if you do have differences, you should examine those differences in the spirit of honesty and fairness.

> I'm not suggesting by any stretch of the imagination that any one of you should give up a well-grounded opinion or to violate your oath.  But it does mean that jurors should not refuse to agree because of mere stubbornness.

> Each one of you should examine the facts from your own viewpoint and from the viewpoint of the other jurors.

> Now the verdict of the jury obviously should represent the opinion of each of you.  But this doesn't mean that you can't change your opinions, changing them by talking to each other, because the very object of this

---

[1]*See Allen v. United States*, 164 U.S. 492, 501 (1896) (approving supplemental instructions to a deadlocked jury under certain circumstances).  An *Allen* charge is sometimes referred to as a "dynamite" charge.

whole system is to reach an agreement by each one of you comparing your different views.

So I don't think you're deadlocked. You go back there and talk it over. . . .

Defense counsel lodged no objection to this instruction. The jury resumed deliberations and returned a sentence of death some four hours later.

In his direct appeal, petitioner designated this instruction as an assignment of error. The Ohio Supreme Court rejected his argument in the following terms:

In his ninth proposition of law, appellant argues that the trial court erred in giving a supplemental instruction ordering the jury to continue its deliberations concerning the sentence after the jury reported to the court that it was deadlocked. Appellant states that when confronted by a deadlocked jury the court should instruct the jury to determine which life sentence to recommend, rather than giving the jury a supplemental charge to continue deliberating in the hope that unanimity will be achieved.

We agree with the court of appeals that the trial court's charge conforms with the type approved in *State v. Maupin* (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708, paragraphs three and four of the syllabus, and *Jenkins,* [15 Ohio St. 3d 164, 473 N.E.2d 264 (1984)], and was not in error. Moreover, the United States Supreme Court ruled that a similar supplemental charge did not impermissibly coerce the jury to return a death sentence in *Lowenfield, supra,* at ----, 108 S.Ct. at 550-552, 98 L.Ed.2d at 577-579.

*State v. Henderson*, 39 Ohio St. 3d at 31-32, 528 N.E.2d at 1244-45 (footnote omitted).

As the Ohio Supreme Court recognized, *Lowenfield v. Phelps*, 484 U.S. 231 (1988), considered the constitutionality of an *Allen* charge given during jury deliberations in the

Petitioner failed to bring this claim on direct appeal. It was first raised in his state post-conviction petition as his tenth cause of action. The court dismissed the claim, holding that it was barred by the doctrine of *res judicata*. *Res judicata* has been established as an adequate and independent state ground upon which to deny review of a constitutional claim. *Seymour v. Walker*, 224 F.3d 542, 554-55 (6th Cir. 2000) (holding that doctrine of *res judicata*, Ohio rule which prohibits claims that could have been brought on direct appeal from being raised in post-conviction petition, was adequate and independent state ground to deny federal habeas review). However, as discussed above, Petitioner's counsel's failure to raise this claim in his direct appeal constitutes ineffective assistance of counsel, which is sufficient to demonstrate the cause and prejudice necessary to overcome the procedural bar. *See Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000) (recognizing that ineffective assistance of counsel can establish cause and prejudice necessary to overcome procedural bar). Moreover, it would be a miscarriage of justice to enforce the procedural default in the instant case inasmuch as Petitioner in fact attempted to raise the claim on direct appeal in a *pro se* brief only to have it rejected by the court. *See Wainwright v. Sykes*, 433 U.S. 72, 84- 87, 90-91 (1977). While Petitioner is not entitled to hybrid representation, it would be fundamentally unjust to foreclose his claim on habeas review when, in spite of his counsel's deficiency, Petitioner himself attempted to preserve his claim.

As to the merits of Petitioner's acquittal-first instruction claim, as discussed above, *see* discussion *supra* Part I.A., I believe that the trial court in fact erred in giving the instruction, which violated Ohio law. Moreover, the trial's court error so undermined the reliability of the jury verdict on the death sentence that Petitioner was denied a fundamentally fair trial and his death sentence should not be permitted to stand. *See Brooks*, 661 N.E.2d at 1042. Accordingly, the district court also erred in denying the writ on this ground.

waive any claim that he did not bring on direct appeal of his death-penalty case, even as a tactic or strategy, failure to raise a meritorious claim that is known to counsel is objectively unprofessional conduct that falls below the level required under the Sixth Amendment. *See United States v. Baird*, 218 F.3d 221, 225 (3d Cir. 2000); *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000).

Petitioner has also demonstrated that he was prejudiced by his counsel's deficient conduct. To show that he was prejudiced, Petitioner must show to a reasonable probability that but for his counsel's deficient performance, the outcome of the appellate proceedings would have been different. In *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999), this Court acknowledged that "counsel's failure to raise an issue whose resolution is clearly foreshadowed by existing decisions" may constitute ineffective assistance of counsel. *Accord Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62-63 (3d Cir. 1989) (holding that even though *Batson* had not been decided, counsel's failure to object to improper use of peremptory challenges was unreasonable). Here, *Brooks* had not been decided when Petitioner filed his direct appeal. Notwithstanding, this Court found in *Mapes*, and the Ohio Supreme Court in *Brooks*, that Ohio Rev. Code § 2929.03 (D)(2) clearly stated the law; *Brooks* only clarified it. A reading of Ohio Rev. Code § 2929.03(D)(2) and the *Brooks* decision clearly indicate that there was a *reasonable probability* that, but for Petitioner's counsel's failure to raise the acquittal-first instruction claim, the outcome of his direct appeal would have been different. Petitioner was therefore prejudiced by his counsel's deficient conduct and was denied constitutionally effective assistance of appellate counsel. The district court erred in denying the writ of habeas corpus on this ground.

## B.

Similarly, the district court erred in denying the writ of habeas corpus on Petitioner's eighth ground for relief, the acquittal-first instruction itself.

penalty phase of a capital case. The State takes the position that *Lowenfield* cannot be distinguished from the case *sub judice* and therefore dictates our outcome.

In *Lowenfield*, during the second day of deliberations the jury indicated to the trial judge that it "was unable to reach a decision at that time, and request[ed] that the court again advise the jury as to its responsibilities." *Id.* at 234. The trial judge responded by asking the individual jurors to respond in writing to the question whether "further deliberations would be helpful in obtaining a verdict." *Id.* Eight of the twelve responded affirmatively. After a defense motion for a mistrial was overruled, the jury reconvened in the courtroom for further instructions, at which time a note was given to the judge stating that some of the jurors had misunderstood his original question. This time the judge asked each juror, "Do you feel that any further deliberations will enable you to arrive at a verdict?" *Id.* This time eleven jurors responded affirmatively. At this point the trial judge gave the jury an *Allen* charge. Defense counsel failed to object to either the polls of the jury or to the supplemental instruction. Thirty minutes after resuming deliberations, the jury returned a sentence of death. *See id.* at 236.

In *Lowenfield*, the Court began its substantive discussion by observing that an *Allen* charge must be reviewed "'in its context and under all the circumstances.'" *Id.* at 237 (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965)); *accord United States v. Reed*, 167 F.3d 984, 990 (6th Cir. 1999). As *Lowenfield* and cases from this circuit suggest, *see, e.g., Williams v. Parke*, 741 F.2d 847 (6th Cir. 1984), the due process inquiry associated with an *Allen* charge focuses on the circumstances that triggered the charge, as well as the language of the charge itself. For example, in *Lowenfield* the Court considered the contents of the note from the jury, the manner in which the trial judge polled its members, and the length of deliberations that followed the *Allen* charge. In *Williams*, we considered similar issues, including whether the charge as given impermissibly coerced minority jurors. *Id.* at 850. Nowhere, however, has the Supreme Court or this court

extended the inquiry as broadly as the dissent would; while the cases cited by the dissent support the unremarkable proposition that an *Allen* charge, like any other jury instruction, cannot be viewed in artificial isolation, they do not support the position that review of the *Allen* charge sweeps all preliminary instructions — even those given without objection — into the inquiry.

After noting the context in which an *Allen* charge must be reviewed, the Court in *Lowenfield* quoted the following passage from *Allen* charge itself:

The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself.

*Lowenfield*, 484 U.S. at 237 (quoting *Allen*, 164 U.S. at 501-502). Although the petitioner contended that an *Allen* charge presented a particular danger of coercion in his case because the Louisiana statute at issue called for the imposition of a life sentence in the event of a hung jury,[2] the Court rejected that contention:

The difference between the division of function between the jury and judge in this case and the division in *Allen*

---

[2] "The court shall sentence the defendant in accordance with the recommendation of the jury. If the jury is unable to unanimously agree on a recommendation, the court shall impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence." La. Code Crim. Proc. Ann. Art. 905.8 (1984).

prejudice with respect to his counsel's failure to raise his acquittal-first instruction claim on direct appeal.

The Court in *White* noted that one of counsel's most overarching duties is to consult with the defendant on important decisions. *Id.* at 994. Examinations into whether the counsel met his obligations, although not determinative, provides insight into whether the counsel's performance was objectively reasonable:

Although the *Strickland* Court warned that counsel's trial tactics should not be subject to "second-guessing" by reviewing courts, "even deliberate trial tactics may constitute ineffective assistance of counsel if they fall outside the wide range of professionally competent assistance." As this Court has recognized, the "label 'strategy' is not a blanket justification for conduct which otherwise amounts to ineffective assistance of counsel."

*Id.* at 994, 995 (internal quotations and citations omitted).

In *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984), where it was conceded that defense counsel's actions were part of trial strategy, this Court held that the counsel's actions nevertheless resulted in ineffective assistance of counsel. The Court noted that "[d]efense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before [the appeal]." *Id.* (citation and internal quotations omitted).

Here, Petitioner informed his counsel of his desire to assert several additional claims which had merit in his direct appeal from his conviction and sentence of death. Particularly, the acquittal-first instruction claim is meritorious as demonstrated by the Ohio Supreme Court's decision in *Brooks*. 661 N.E.2d at 1042. *Brooks* held that § 2929.03(D) on its face prohibits such an acquittal-first instruction. *Id.*; *see also* discussion *supra* Part I.A. Given the potential that Petitioner could

was not firmly established and regularly applied at the time of Petitioner's direct appeal.[2]  *See Rogers*, 144 F.3d at 995 (holding that state court rule was not firmly established rule and regularly followed where substance of rule precluding relief on grounds that could have been pursued on direct appeal was not established until after petitioner's conviction); *see also Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990) (finding that petitioner had exhausted his state court remedies where he presented a claim for ineffective assistance of counsel in post-conviction proceeding because, by 1990, Ohio Supreme Court had not spoken clearly on how a petitioner should pursue claims of ineffective assistance of counsel). The procedural rule upon which the Ohio Court of Appeals relied to reject Petitioner's claim does not operate as an adequate and independent state ground upon which to deny federal review of Petitioner's claim; his claim therefore is not procedurally barred.

### *Merits*

To demonstrate a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Petitioner must show that his counsel's performance was deficient and that he was prejudiced by that deficiency. A counsel's performance is deficient if it falls below an objective standard of reasonableness such that the counsel's "identified acts and omissions were outside the wide range of professionally competent assistance." *White v. McAninch*, 235 F.3d 988, 994 (6th Cir. 2000) (internal quotations and citation omitted). To show prejudice, the petitioner "must be able to demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 995 (internal quotations and citation omitted). In the instant case, Petitioner has demonstrated deficient performance and has established

---

[2]The district court also demonstrated that any rule barring the review of ineffective assistance of counsel claim in post-conviction petitions was not regularly followed. *Henderson v. Collins*, 101 F. Supp. 2d 866, 885 (S.D. Ohio 1999).

obviously weighs in the constitutional calculus, but we do not find it dispositive. The State has in a capital sentencing proceeding a strong interest in having the jury "express the conscience of the community on the ultimate question of life or death." *Witherspoon v. Illinois*, 391 U.S. 510, 519, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968). Surely if the jury had returned from its deliberations after only one hour and informed the court that it had failed to achieve unanimity on the first ballot, the court would incontestably have had the authority to insist that they deliberate further. This is true even in capital cases such as this one and *Allen*, even though we are naturally mindful in such cases that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978).

*Lowenfield*, 484 U.S. at 238-39. Finally, the Court conceded that the jury's relatively quick response to the *Allen* charge "suggests the possibility of coercion," but nonetheless concluded that defense counsel's failure to object "indicates that the potential for coercion . . . was not apparent to one on the spot." *Id.* at 240 (footnote omitted).

With these considerations in mind, we turn to the case before us. We begin by observing that neither party suggests that the language of the supplemental charge given by the trial court runs afoul of *Allen*. *See State v. Maupin*, 42 Ohio St. 2d 473, 330 N.E.2d 708 (1975) (syllabus) (setting out preferred language of supplemental *Allen* charge). Rather, petitioner focuses upon the manner in which the charge potentially interacts with the Ohio sentencing statute. That statute provides as follows:

Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury,

shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

OHIO REV. CODE ANN. § 2929.03(D)(2) (Anderson 1982) (subsequently amended to include a sentence of life imprisonment without parole). The Ohio Supreme Court has consistently read the statute to require that both a sentence of death and a sentence of life with parole eligibility be unanimous. *See State v. Jenkins*, 15 Ohio St. 3d 164, 473 N.E.2d 264 (1984) (syllabus); *State v. Springer*, 63 Ohio St. 3d 167, 586 N.E.2d 96 (1993) (syllabus) (when jury unable to reach a unanimous verdict on either death or one of two statutorily prescribed life sentences, the statute requires the trial court to impose one of two life sentences). More recently, the Court explained, "*Jenkins* defines what the jury's job is – to render a unanimous verdict. *Springer* simply explains what a trial court must do if a jury is deadlocked, that is, when the jury does not properly do its job." *State v. Brooks*, 75 Ohio St. 3d 148, 162, 661 N.E.2d 1030, 1042 (1996). In *Brooks*, the Court also clarified two other propositions: 1) a jury need not rule out the death penalty before considering a life sentence, and 2) "practically speaking, a lone juror could prevent the imposition of the death penalty." *Brooks*, 75 Ohio St. 3d at 160-61, 661 N.E.2d at 1041-42.

The thrust of petitioner's position is that, consistent with *Springer*, the trial court should have taken the matter from the

method by which a petitioner could pursue a claim of ineffective assistance of appellate counsel. *Id.* at 1209. At that time, the court held that claims of ineffective assistance of appellate counsel could not be raised in post-conviction proceedings. *Id.* The court stated that, from that point forward, petitioners could bring claims of ineffective assistance of appellate counsel by filing applications for delayed reconsideration in the Ohio Court of Appeals, and if denied, by filing a delayed appeal in the Ohio Supreme Court. *Id.* In making its ruling, the court noted the unsettled nature of the law:

> In light of the fact that Ohio has no statutory authority or court rules dedicated to the procedure to be followed by defendants who allege ineffective assistance of appellate counsel, we recommend that the Rules Advisory Committee appointed by this court review whether an amendment to App. R. 14(B) or a new rule should be adopted to better serve claimants in this position.

*Id.* at 1209 n.6.

In response to the ruling by the *Murnahan* Court, Ohio Appellate Rule 26 was amended, effective July 1, 1993, well after Petitioner had filed his application for delayed reconsideration, permitting a defendant in a criminal case to apply for reopening of his appeal. It provides:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

Ohio R. App. P. 26(B)(1).

Based on the Ohio Supreme Court's ruling in *Murnahan*, the district court was correct in ruling that the procedural law

constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

In holding that Petitioner's claim was untimely, the Ohio Court of Appeals relied on Ohio Rules of Appellate Procedure Rules 14(B) and 26. Rule 26(A) provides:

> Application for reconsideration of any cause or motion submitted on appeal shall be made in writing before the judgment or order of the court has been approved by the court and filed by the court with the clerk for journalization or within ten days after the announcement of the court's decision, whichever is the later. The filing of an application for reconsideration shall not extend the time for filing a notice of appeal in the Supreme Court.

Ohio R. App. P. 26(A). And Rule 14(B) provides that "[e]nlargement of time to file an application to reconsider pursuant to App. R. 26(A) shall not be granted except on a showing of extraordinary circumstances." Ohio R. App. P. 14(B). The Ohio Court of Appeals determined that Petitioner had not shown good cause for the delay in filing his application for reconsideration under *State v. Murnahan*, 584 N.E.2d 1204 (1992). The record therefore clearly shows that Petitioner failed to comply with a procedural rule upon which the state court relied to dismiss his claim.

The question now becomes whether this procedural rule is an adequate and independent state ground. The law demonstrates that it is not. For a state procedural rule to be an adequate and independent state ground, it must be firmly settled and regularly applied. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998).

The Ohio Supreme Court decided *State v. Murnahan*, 584 N.E.2d 1204 (1992), in February of 1992, which was six years after Petitioner pursued his direct appeal in 1986, three years after Petitioner filed a petition for post-conviction relief, and nine months prior to the filing of his application for delayed consideration. In *Murnahan*, recognizing that the law was unsettled, the Ohio Supreme Court established the proper

jury at the time that it first reported a deadlock and imposed one of the two possible life sentences. According to petitioner, to do otherwise favors only those jurors supporting the death penalty because continued deliberation may result in a death verdict, while calling a halt to deliberation results in a statutorily mandated life sentence. Thus, an *Allen* charge is impermissibly coercive because it encourages a death sentence.[3] In granting the writ on this issue, the district court concluded that "because the trial judge's original charge to the jury in the penalty phase was not an accurate reflection of the language of § 2929.03(D)(2), the supplemental instruction to the jury resulted in coercion and prejudice to Petitioner . . . ." *Henderson*, 101 F. Supp. 2d at 916. The part of the original charge found objectionable reads as follows:

> If the State of Ohio has proved beyond a reasonable doubt that either one of the aggravating circumstances of the murder outweighs any mitigating factor that may exist in this case, then it would be your duty to recommend the death penalty.
>
> However, if you find from the evidence that the State has failed to prove beyond a reasonable doubt that either one of the aggravating circumstances of the murder outweighs any mitigating factor that may exist, then it's your duty to not recommend the death penalty.
>
> . . . .
>
> [I]n the event that you do not recommend the death penalty, obviously you would continue your deliberations and you'll recommend one of two other possible penalties.

---

[3] Petitioner also points out that the trial judge prefaced his *Allen* charge by reminding the jury that it should not "consider sympathy, bias or prejudice." Even if that instruction passes constitutional muster, petitioner cites it as further proof that the *Allen* charge was given with an eye towards securing a death verdict.

*Id.* at 917. In the view of the district court, "[t]his language does not accurately reflect the language in § 2929.03(D)(2)." *Id.*

We are reluctant to accord this preliminary instruction significant weight in our consideration of the constitutionality of the subsequent *Allen* charge for three reasons. First, as already discussed, we read *Jenkins* as authorizing a review of the "facts and circumstances" surrounding the *Allen* charge itself and not as a *carte blanche* invitation to bootstrap every preliminary instruction into the inquiry. Second, the record reveals that counsel for petitioner did not advance that argument to the Ohio courts. Third, and most importantly, we are not convinced that the instruction did, in fact, misrepresent the statute. In fact, even the district court conceded, "We believe that the trial judge's original charge to the jury correctly impressed upon them that they had to determine whether Petitioner would or would not receive the death penalty based on the weight of the aggravating factors before beginning deliberations on recommending either of the two life sentences." *Id.* at 918. Moreover, the pattern jury instructions propounded by the Ohio Judicial Conference for the statute at issue provide, in part:

> CONCLUSION. You shall recommend the sentence of death if you unanimously (all twelve) find by proof beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating factors.
>
> If you do not so find, you shall unanimously (all twelve) recommend either life sentence with parole eligibility after serving twenty years of imprisonment or life sentence with parole eligibility after serving thirty years of imprisonment.

*Ohio Jury Instructions*, Vol. 4, § 503.016(A) (Anderson) (2000). Like the instruction given by the trial court, the pattern instructions reflect the statutory assumption that a jury will first consider whether the death penalty represents an appropriate punishment before considering either of the two life sentences. Consistent with *Brooks, supra*, however,

the procedural default of, *inter alia*, his eighth ground for relief, the acquittal-first instruction claim.

Petitioner attempted to amend his state post-conviction petition to raise a claim for ineffective assistance of appellate counsel as his thirteenth cause of action. The state opposed the motion and the trial court denied Petitioner's request and struck it from the record. Petitioner's first habeas petition was dismissed without prejudice so that he could seek review of his ineffective assistance of appellate counsel claim. Petitioner thereafter filed an Application for Delayed Reconsideration of his direct appeal, which was denied as untimely.

### *Procedural Default*

Respondent argued in the district court that Petitioner had defaulted his claim for ineffective assistance of appellate counsel as demonstrated by the state appellate courts' rejection of Petitioner's claim as being untimely filed. The district court properly rejected this argument and held that the procedural rule upon which the state appellate court relied was not an independent and adequate state ground.

In *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), the Supreme Court reiterated that a federal court could not hear the habeas petition of a state prisoner where the decision to deny relief in the state court rested on an adequate and independent state ground. This Court set forth a four-part test to determine whether a petitioner has procedurally defaulted a claim on habeas review under which the court must determine: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and the petitioner failed to comply with the rule; (2) whether the state courts actually enforced the state procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) whether the petitioner has demonstrated that there exists cause for his failure to comply with the rule and that he was prejudiced by the alleged

[t]he trial court's instructions to the jury at the sentencing phase of the proceedings advised the jury they must consider death first before commencing deliberation on either of the two life verdicts. This instruction is fundamentally unfair, and violates the Fifth, Sixth, and Eighth and Fourteenth Amendments to the United States Constitution.

(J.A. at 66) (hereinafter "acquittal-first instruction claim"). Petitioner attempted to raise this assignment of error in a *pro se* supplemental brief that was filed on his direct appeal, but the state appellate court rejected the supplemental brief. Petitioner argues that the state violated his constitutional right by first precluding him from raising the assignments of error on his direct appeal, and then denying him the ability to establish ineffective assistance of appellate counsel in his post-conviction petition. Petitioner claims that the State's failure to provide an adequate procedure by which he could raise his ineffective assistance of appellate counsel claim violates his constitutional rights under the Sixth, Eighth, and Fourteenth Amendments.

The record and the law demonstrate that Petitioner received ineffective assistance of appellate counsel inasmuch as Petitioner's counsel's failure to raise his acquittal-first instruction claim on direct appeal constituted deficient representation and Petitioner was prejudiced by such representation. Moreover, as discussed below, Petitioner's claim of ineffective assistance of counsel is sufficient to demonstrate the cause and prejudice necessary to overcome Petitioner's procedural default of his acquittal-first instruction claim.

### A.

As his twenty-seventh ground for relief in his habeas petitioner, Petitioner claims that he received ineffective assistance of appellate counsel. Petitioner claimed that the ineffective assistance of appellate counsel claim would demonstrate the cause and prejudice necessary to overcome

neither instruction explicitly requires the jury to rule out death before considering a life sentence. *See Scott v. Mitchell*, 209 F.3d 854, 873-76 (6th Cir. 2000) (discussing sentencing charge in Ohio capital case); *but see Mapes v. Coyle*, 171 F.3d 408, 416-17 (6th Cir. 1999) (distinguished by *Scott*).

In *State v. Davis*, 76 Ohio St. 3d 107, 666 N.E.2d 1099 (1996), the Ohio Supreme Court reviewed a challenge similar to the one advanced by petitioner respecting an acquittal first instruction. As in this case, the trial of defendant in *Davis* occurred prior to the Ohio Supreme Court's decision in *Brooks*. The Court rejected defendant's claim because the jury instruction at issue adequately informed the jury that a recommendation of death required unanimity and the instruction made the jurors aware that any one of them could block the imposition of a death sentence. *Id.* at 76 Ohio St. 3d at 117, 666 N.E.2d at 1109.

*Davis* requires that the challenged instruction be an acquittal first instruction similar to the one struck down in *Brooks*[4] before reversal of a capital sentence is warranted. In the case now before us, the instruction at issue informed the jurors that their recommendation of death required unanimity: "[A]ll twelve of you must agree on whichever verdict you sign . . . [Y]ou cannot have a recommendation or a verdict if it is seven to five, ten to two or eleven to one." Although the trial court did not expressly state that a single juror could preclude a death sentence, in our view, the instruction challenged by petitioner and the one approved in *Davis* are indistinguishable with respect to *Brooks*.

Finally, the dissent appears to confuse an "acquittal first" instruction with a "consider first" instruction. While an instruction may not require that jurors first unanimously find that the aggravating factors outweigh those in mitigation before they may consider which life sentence to impose, the

---

[4] "You are now required to determine unanimously that the death penalty is inappropriate before you can consider a life sentence." *Brooks*, 75 Ohio St. 3d at 159; 661 N.E.2d at 1040.

structure of the statute implies that the jurors may elect to consider the death penalty first. After all, the statute instructs the jury to consider the life sentences absent a finding that the aggravating factors outweigh the mitigating factors. Logically, the jury can only have reached, or failed to reach, such a "finding" if it has already considered the death penalty. We find nothing constitutionally impermissible with allowing jurors to consider whether death is appropriate so long as they are aware that they may consider possible life sentences before reaching a final decision with respect to death. The instruction given by the trial court comports with constitutional requirement.

In the end, then, we return to the question that we posed at the outset of our discussion: Can the case before us be materially distinguished from *Lowenfield*? We conclude that it cannot and we therefore must reverse the order of the district court granting a conditional writ of habeas corpus. Both the Louisiana statute at issue in *Lowenfield* and the Ohio statute before us have similar features despite differences in their language. Both require that the jury's recommendation, whether for life or death, be unanimous. And, most significant in our eyes, each statute provides that, if the jury is unable to reach a verdict, the court shall impose a life sentence. Consequently, petitioner's argument that an *Allen* charge can only favor a verdict for death would apply with equal force in context of the Louisiana statute construed in *Lowenfield* and was, by implication, rejected by the Supreme Court. Finally, the circumstances surrounding the jury deliberations in *Lowenfield* imply an even greater danger of coercion than those in the case before us: the trial judge polled the jury twice and a verdict of death was returned within thirty minutes of the *Allen* charge. Nonetheless, the Supreme Court upheld the verdict.

This court is bound by the decisions of the Supreme Court. Where, as here, we are unable to perceive material distinctions between a decision of that Court and the case before us, we are obligated to defer to its lead regardless of our own inclinations. Because we detect no error in the *Allen*

there was instructed that if it could not reach a verdict, the court would impose a life sentence--any lone juror in Petitioner's case had no such knowledge. Instead, the juror likely thought that he or she had to agree with the majority because that is what the instructions implied.

Unlike *Jenkins* and *Burgos*, this case involves the penalty phase of a death penalty trial where the Supreme Court has recognized that the absence of one purpose underlying the *Allen* charge--"the avoidance of the societal costs of a retrial"--"obviously weighs [against an *Allen* charge] in the constitutional calculus." *Lowenfield*, 484 U.S. at 238. Of course, this is not to suggest that an *Allen* charge is impermissible in a death penalty case because the *Lowenfield* Court also recognized that the government had an interest in achieving unanimity at the sentencing phase of a death penalty case. *Lowenfield*, 484 U.S. at 238. In fact, under different circumstances, a properly worded *Allen* charge might have been permissible in this case. However, an *Allen* charge under some circumstances can present a greater concern in the context of the sentencing phase of a death penalty case. In such a context, supplemental instructions of this type should be scrutinized with care and particularity to avoid errors, confusion or doubt.

## II. Ineffective Assistance of Appellate Counsel and Erroneous Jury Instructions at the Penalty Phase

While I agree with the majority that many of Petitioner's claims in Case No. 99-4088 are meritless, I believe that the district court's determination that Plaintiff failed to show prejudice sufficient to demonstrate ineffective assistance of appellate counsel was in error. In the district court, Petitioner asserted that he received ineffective assistance of appellate counsel because his counsel failed to assert as assignments of error on direct appeal certain grounds that Petitioner thought warranted argument. One such assignment of error which Petitioner requested that his counsel put forward was the eighth claim or ground for relief in his habeas petition before the district court, which provided

Although the statements cited above do not represent the entire tone of the *Allen* charge in this case, the trial court's qualifying statements such as "I'm not suggesting by any stretch of the imagination that any one of you should give up a well-grounded opinion or to violate your oath" or "Now the verdict of the jury obviously should represent the opinion of each of you" do not remedy the harm created by accompanying statements such as "But it does not mean that jurors should refuse to agree because of mere stubbornness" or "But this doesn't mean that you can't change your opinions" or "you have a duty to agree." *See Burgos*, 55 F.3d at 940.

Given that Petitioner's deadlocked, death-penalty phase jury had been twice told that it could not consider a life sentence until it had unanimously decided that the death penalty was not appropriate, the message conveyed by the jury to the trial court, and the language of the *Allen* charge, in its context and under all the circumstances, the *Allen* charge in the instant case was impermissibly coercive.

Moreover, the *Allen* charge in fact prejudiced Petitioner where the jury was told it had to unanimously agree on whether to impose or reject the death sentence before it could consider a life sentence. Here, any juror in the minority who was holding out for life had absolutely no way of knowing that he or she could have in fact prevented the imposition of the death penalty. Contrary to Respondent's argument, the fact that the jury deliberated for approximately four hours after the *Allen* charge before returning a verdict and that Petitioner's counsel failed to object does not negate the prejudice in this case. *See Smalls*, 191 F.3d at 281 (concluding that "the length of deliberations in this case did not diminish the coerciveness of the supplemental jury charge" where "the jury charge . . . failed to inform the jurors of the possibility that they could remain deadlocked rather than surrender their conscientiously held beliefs). Unlike *Lowenfield*, relied on by both the majority and Respondent on this point, the prejudice here is clear. Whereas the lone juror in *Lowenfield* knew the power of his or her vote--the jury

charge as given by the trial court and perceive nothing about the context of the charge that rendered it unduly coercive in light of *Lowenfield*, we must reverse the district court's conditional grant of the writ.

## II.

Accordingly, the order of the district court conditionally granting petitioner a writ of habeas corpus is hereby **vacated** and petitioner's sentence is **reinstated**. In all other respects, the order of the district court is **affirmed**.

---

### DISSENT

---

CLAY, Circuit Judge, dissenting.    Contrary to the majority's opinion, in its context and under all the circumstances, the *Allen* charge given to Petitioner's deadlocked, death-penalty phase jury was unduly coercive and deprived Petitioner of the fair trial he is due under the Sixth Amendment.  Furthermore, the district court erred in failing to grant the writ of habeas corpus on the grounds that Petitioner was denied effective assistance of appellate counsel guaranteed by the Sixth Amendment.  Petitioner was also denied a fair trial by the acquittal-first instruction given his jury during the penalty phase of his trial.  For these reasons, I respectfully dissent.

Petitioner raised twenty-seven grounds for relief in his habeas petition.  Among other claims, Petitioner asserted that (1) the *Allen* charge given to the jury during the penalty-phase of the trial was coercive and violated his right to a fair trial under the Sixth Amendment; (2) he was denied effective assistance of appellate counsel; and (3) the preliminary jury instruction given during the penalty-phase of his trial, referred to as an acquittal-first instruction, violated Ohio law and denied him a fair trial.  The district court granted the writ of habeas corpus on the basis of Petitioner's claim that the *Allen* charge given in his case was coercive.  However, the district court denied relief as to Petitioner's claim that he received ineffective assistance of appellate counsel, his claim that the preliminary jury instruction denied him a right to a fair trial, and on all other grounds.   In Case No. 99-4046, the government now appeals the district court's order granting Petitioner's application for the writ.  In Case No. 99-4088, Petitioner appeals the district court's order to the extent that it dismissed his petition as to all other grounds for relief.

conjunction with the court's immediately preceding remarks about pride preventing one from revisiting a position previously taken, it is reasonable to conclude that such remarks would weigh more heavily on those jurors taking a stance contrary to that of the majority of their peers.

55 F.3d at 940.  Viewing the *Allen* charge "from the perspective of a juror in the minority, because 'they always know their minority status, and if fearfully inclined, may presumably suspect a disgruntled judge can find them out," the court concluded that the supplemental charge was coercive.  *Id.*   The court further concluded that "[t]he qualifying statements sprinkled into the court's charge, such as 'it is not my duty to try and coerce you' and 'I'm not asking anybody to give up a firmly held belief' were not sufficient to remedy the harm done."  *Id.*

Like *Jenkins* and *Burgos*, the clear import of the trial court's instructions (admonishing the jury that it had a duty to agree--that all twelve jurors must agree whether to recommend or not recommend death before it could consider life, or that the jurors should not disagree because of "mere stubbornness") was to urge the jurors in the minority to consider and agree with the majority's position; the instructions would clearly weigh more heavily on a juror in the minority than in the majority.  In the instant case, the trial court's statements that the jury had a duty to agree is synonymous with the trial court's instruction in *Jenkins* that the jury had to reach a decision in that case, which was found to be coercive by the Supreme Court.[1]

---

[1] The majority also relies on this Court's decision in *Williams v. Parke*, 741 F.2d 847 (6th Cir. 1984), in arguing that the *Allen* charge in the instant case was not coercive.  However, key to this Court's decision in *Williams* was that the *Allen* charge in that case "did not suggest that the jury was required to agree."  741 F.2d at 850 (distinguishing the *Allen* charge in that case from the *Allen* charge in *Jenkins*).  In this case, however, the trial court clearly told the jurors that they had a duty to agree--that they were required to agree.

After deliberating for almost fourteen hours--a full afternoon, well into the evening and all morning--the jury returned to court and delivered a note stating it was "deadlocked, period." The jury did not ask for further instructions or intimate that further deliberations were necessary as did the jury in *Lowenfield*; the jury instead unequivocally stated that it was at an impasse. The trial court thereafter told the jury that it did not believe that it was deadlocked. The trial court told the jury to continue deliberation. In so doing, the trial court reminded the jurors that they took an oath and that they had a duty to agree. The court further stated that the jurors "should not refuse to agree because of mere stubbornness," a statement that would tend to weigh more heavily on jurors favoring a life sentence rather than a death sentence when such jurors are in the minority. After being instructed to continue to deliberate, the jury returned a sentence of death by the close of the business day, around 5:30 p.m.

This case is on par with *Jenkins*, 380 U.S. 445 (1965), and *United States v. Burgos*, 55 F.3d F.3d 933 (4th Cir. 1995). In *Jenkins*, the jury communicated to the court that it could not agree on a verdict, and the court instructed the jury that, "[y]ou have got to reach a decision in this case." 380 U.S. at 446. The Supreme Court held that the trial court's instruction had "the coercive effect attributed to it" and was unconstitutional. *Id.*

Similarly, in *Burgos*, the Fourth Circuit held that a supplemental charge to a deadlocked jury was coercive. There, the court stated that the prejudice of an *Allen* charge can arise from even subtle statements. In *Burgos*, the court noted,

> [a]lthough the district court judge stated that "I'm not asking anybody to give up a firmly held belief. You don't have to do that," his very next statement was "[b]ut I do ask you to think about it." The clear implication of the court's remark is that jurors should think about giving up their firmly held beliefs. Regardless of the district court's intentions, when these three lines are read in

## I. The *Allen* Charge

With respect to Case No. 99-4046, the district court concluded that Petitioner had been deprived of a fair trial when the state trial court gave an unduly coercive *Allen* charge to Petitioner's deadlocked, death-penalty phase jury in violation of the Sixth Amendment. The majority erroneously reverses the district court's order granting the writ of habeas corpus.

### A.

The majority opinion with respect to this claim is fundamentally and fatally flawed in two respects. First, the majority ignores the mandate of *Jenkins v. United States*, 380 U.S. 445, 446 (1965), which requires that the court consider the *Allen* charge "in its context and under all the circumstances" in determining whether the supplemental jury charge was coercive. Second, the majority ignores the true import of the *Allen* charge given in this case due in part to a misplaced reliance on *Lowenfield v. Phelps*, 484 U.S. 231 (1988). Each issue will be addressed in turn.

Although the majority is "reluctant" to accord much weight to the preliminary instructions given the death-penalty phase jury, these preliminary instructions constitute part of the very "circumstances" and "context" under which the subsequent *Allen* charge was given and thus must be considered in determining whether the *Allen* charge was coercive. The majority's failure to consider the *Allen* charge under the context of the earlier preliminary instructions contravenes the Supreme Court's mandate in *Jenkins*. *See Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir. 1999) (holding that *Allen* charge was coercive after examining charge "as a part of the whole instruction, and indeed, as part of all the proceedings that were observed by the jury") (citation and internal quotation marks omitted); *United States v. Tines*, 70 F.3d 891, 896 (6th Cir. 1995) (concluding that when viewing jury instructions, as a whole, *Allen* charge was not coercive); *United States v. Wauneka*, 842 F.2d 1083, 1088 (9th Cir. 1988) (same); *United States v. LaRiche*, 549 F.2d 1088, 1092-93 (6th Cir. 1977)

(relying on earlier instruction from trial court as well as other circumstances in which *Allen* charge was given to conclude that *Allen* charge was not impermissible).

In an effort to justify why it should not consider the *Allen* charge "under all circumstances," including in the context of the earlier preliminary instructions, the majority also erroneously concludes that the preliminary instruction did not misstate or violate Ohio law, despite the holding of *State v. Brooks*, 661 N.E.2d 1030 (Ohio 1996). In *Brooks*, the court held that a sentencing phase jury instruction that required a jury to unanimously reject the death penalty before it considered a life sentence was erroneous in light of Ohio Revised Code § 2929.03(D)(2), which provides in pertinent part:

> If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. *Absent such a finding,* the jury shall recommend that the offender be sentenced to one of [three life sentences] . . . .

Ohio Rev. Code § 2929.03(D)(2) (emphasis added). The court reaffirmed that section 2929.03(D)(2) "contains no limiting language as to when a jury may contemplate a life sentence." *Brooks*, 661 N.E.2d at 1041. But the jury instruction that was given erroneously "required the jury to issue a death sentence unless each juror was convinced that the death penalty was inappropriate." *Id.* The court stated that "the jury in this case did not have to rule out the death penalty unanimously before considering a life sentence. Unfortunately, they were instructed exactly otherwise." *Id.* While the *Brooks* court only prospectively required that an instruction be given to a jury that a solitary juror could prevent the imposition of the death penalty, the court nevertheless concluded that the outcome of the sentencing phase of the trial was undermined by the erroneous instruction

---

to well and truly try in true deliverance make between the State of Ohio and the defendant, Jerome Henderson. This means that your verdict, your recommendation in this penalty hearing, must be based on the evidence that you received in this courtroom.

You may not consider sympathy bias or prejudice. And may I say you may not guess as to possibilities outside of the evidence that you heard in this courtroom. You must and you have to decide the issues that's [sic] in front of you in this case only on the evidence that you heard in this courtroom.

You all know that for the purpose of returning a verdict at this time all twelve of you must agree. And you have a duty to agree, if it is at all possible.

Now when you talk to each other in that jury room, obviously each one of you should pay the proper respect to the other person's opinion. And if you do have differences, you should examine those differences in the spirit of honesty and fairness.

I'm not suggesting by any stretch of the imagination that any one of you should give up a well-grounded opinion or to [sic] violate your oath. But it does mean that jurors should not refuse to agree because of mere stubbornness. Each one of you should examine the facts from your own viewpoint and from the viewpoint of other jurors.

Now the verdict of the jury obviously should represent the opinion of each one of you. But this doesn't mean that you can't change your opinions, changing them by talking to each other, because the very object of this whole system is to reach an agreement by each one of you comparing your different views.

So I don't think you're deadlocked. You go back there and talk it over.

(J.A. at 2390-91.)

As stated above, the jury had been told in the preliminary instructions that it had to recommend or not recommend death before it could consider either of the life sentences and that its recommendation, whatever it was, had to be unanimous.

did not know the numerical division of the jury, and the language of the instruction, the *Lowenfield* Court held that the instruction in that case was not coercive").

## B.

Under certain circumstances and with some changes in language, an *Allen* charge might have been appropriate in this case. However, in its context and under all the circumstances, including the preliminary instructions and the message the jury conveyed to the court, the *Allen* charge in this case was unduly coercive and therefore denied Petitioner a fair penalty-phase trial as required under the Sixth Amendment. *See Lowenfield*, 484 U.S. at 241 ("Any criminal defendant, and especially any capital defendant, being tried by a jury is entitled to the uncoerced verdict of that body.").

The circumstances under which the *Allen* charge was given are as follows. The penalty phase in Petitioner's trial was held on Wednesday, July 24, 1985. Prior to the jury's deliberation in the penalty phase, the trial court gave the aforementioned preliminary instruction. The court thereafter read the possible jury verdict forms in order, beginning with death, then thirty to life and finally twenty to life. The trial court, however, did not give the traditional instruction that the jury should attach no significance to the order in which instructions were given. The trial court then reminded the jury that all twelve jurors must agree on whatever decision they made.

The jury began deliberating at 12:31 p.m. on the day of the sentencing hearing. The jury took a break for dinner and thereafter continued deliberating until 9:15 p.m., when the jury adjourned for the night. Deliberations continued at 9:00 a.m. the following morning. And at 1:22 p.m., the jury communicated the following message to the court: "We are deadlocked, period." (J.A. at 2390.) At this point, the trial court instructed the jury as follows:

Well, let me just say this to all of you, I want to remind each of you that you all took an oath, and that oath was

---

and thus the defendant's constitutional right to a fair trial had been violated. *Id.* at 1042. The court stated,

We cannot know what was going on in the minds of the jurors when they were given the duty of deciding [the defendant's] fate, and we thus cannot say for certain whether one of the jurors would have been moved enough by the mitigating factors in Brook's favor . . . to have recommended a life sentence. The record reflects that the jury in this case was instructed in a manner completely contrary to law, making it less likely for Brooks to benefit from the opinion of one juror that death was inappropriate. As the *Kubat* court noted, if a juror believed his one vote could not affect the ultimate result, he might acquiesce in the death sentence. In this case, the jury instruction undermined the reliability of the jury verdict and risked erroneous imposition of the death sentence, thereby materially prejudicing Brook's right to a fair trial.

*Id.* The court therefore reversed the imposition of the death sentence and ordered that the defendant be resentenced. *Id.*

The majority in the instant case ignores the clear holding of *Brooks*. To do so, the majority relies on *dicta* in *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). In *Scott*, the Court determined that the petitioner had procedurally defaulted his claim that his death-penalty phase jury was improperly given a unanimity instruction and thus the Court could not consider the claim on its merits. 209 F.3d at 873. The Court nevertheless proceeded in *dicta* to consider the merits of the claim and concluded that an instruction which charged that the jury must unanimously find the death sentence to be inappropriate before it considered imposing a life sentence, an instruction contrary to section 2929.03(D)(2), did not deprive the petitioner of a fair trial. *Id.* at 876-77.

In reaching this conclusion, the *Scott* Court attempted to negate this Court's decision in *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999), insofar as it concluded in *dicta* that an instruction requiring that a jury unanimously reject a death

sentence before considering life was antithetical to Ohio law. *Scott*, 209 F.3d at 876 (rejecting *Mapes*). Relying on *Brooks*, the *Mapes* Court concluded,

> [a]lthough the trial court in this case did not have the benefit of *Brooks*, that case clearly establishes that the trial court misapplied Ohio Revised Code § 2929.03(D)(2) by requiring the jury to unanimously reject the death penalty before considering a life sentence.

171 F.3d at 416-17. The *Scott* Court rejected *Mapes* based on its reading of this Court's decision in *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998). However, *Coe* should not be regarded as controlling in *Scott*, *Mapes*, or the case currently before the Court, inasmuch as the *Coe* decision held that the unanimity instruction in that case was given in compliance with Tennessee law and that "[t]he state law did not unconstitutionally deceive the jury and infect the verdict in this case with unreliability . . . ." *Id.* at 340. Here, there is a clear decision from the Ohio Supreme Court indicating that an instruction of this kind is contrary to Ohio law and that it undermines the reliability of a jury verdict. Accordingly, this Court need not and should not follow the *dicta* in *Scott*.

Instead, *Brooks* is controlling and makes clear that the preliminary instructions did not comport with Ohio law. The preliminary instructions read in pertinent part:

> If the State of Ohio has proved beyond a reasonable doubt that either one of the aggravating circumstances of the murder outweighs any mitigating factor that may exist in this case, then it would be your duty to recommend the death penalty.
> However, if you find from the evidence that the State has failed to prove beyond a reasonable doubt that either one of the aggravating circumstances of the murder outweighs any mitigating factor that may exist, then it's your duty to not recommend the death penalty.
> *In the event that you do not recommend the death penalty, obviously you would continue your deliberations*

would impose a sentence of life imprisonment without the possibility of probation, parole, or suspension of sentence." 484 U.S. at 234. Second, in this case, the jury told the court that it was "deadlocked, *period*" and did not request further instructions. (J.A. at 2390) (emphasis added). In *Lowenfield*, however, the jury in that case told the court it was "unable to reach a decision *at that time, and request[ed] that the court again advise the jury as to its responsibilities.*" 484 U.S. at 234 (emphasis added). Third, the trial court in Petitioner's case again instructed the jury that it had to reach a unanimous decision; the trial court instructed the deadlocked jury "that for the purpose of returning a verdict at this time all twelve of you *must* agree." (J.A. at 2390) (emphasis added). (Although this instruction might ordinarily be acceptable for inclusion in an *Allen* charge, it is troubling when given as a part of a charge where the jury is lead to believe that it must unanimously resolve the issue of death before considering a life sentence.) In a stark contrast, when the court in *Lowenfield* gave the jury the supplemental instruction, it again reminded the jury that if it could not reach a unanimous decision, the court would impose a life sentence. 484 U.S. at 235. Fourth, as discussed later, the language of the *Allen* charge in this case was, as a whole, more forceful than the *Allen* charge given in *Lowenfield*. In the case at bar, the trial court did much more than tell the jurors to consider each other's views and try again.

Therefore, contrary to the majority's contention, there are differences between the *Allen* charge in *Lowenfield* and the *Allen* charge in the instant case. Moreover, these differences are material because they create the context and the circumstances under which the *Allen* charge was given. Since the determination of whether an *Allen* charge is coercive is necessarily fact intensive and judged on a case-by-case basis, *Lowenfield* cannot properly be used as a shield to justify the constitutional error committed in Petitioner's case. *See also, e.g., Tucker v. Catoe*, 221 F.3d 600, 609 (4th Cir. 2000) (distinguishing *Lowenfield* because "[i]n the totality of the circumstances of Lowenfield's case, including: the fact that the instruction had been requested by the jury, that the court

sent a note to the court stating that "the jury was unable to reach a decision *at that time*, and *requesting that the court again advise* the jury as to its responsibilities." *Id.* (emphasis added). After learning that eleven of the twelve jurors thought that further deliberations would be helpful, the trial court gave the following instruction:

> "Ladies and Gentlemen, as I instructed you earlier *if the jury is unable to unanimously agree on a recommendation the Court shall impose the sentence of Life Imprisonment without benefit of Probation, Parole, or Suspension of Sentence.*
> "When you enter the jury room it is your duty to consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a just verdict if you can do so without violence to that individual judgment.
> "Each of you must decide the case for yourself but only after discussion and impartial consideration of the case with your fellow jurors. You are not advocates for one side or the other. *Do not hesitate to reexamine your own views and to change your opinion if you are convinced you are wrong but do not surrender your honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.*"

*Id.* at 235 (citation omitted) (emphasis added). The jury resumed deliberations and returned some thirty minutes later with a verdict sentencing the defendant to death. *Id.* After considering the *Allen* charge in "its context and under all the circumstances," the Court found that the charge was not coercive. *Id.* at 241.

The context and the circumstances of the *Allen* charge in the instant case differ greatly. First, unlike in *Lowenfield*, the trial court instructed the jury that it had to unanimously reject death before it considered life. The trial court in *Lowenfield* instructed the jury before it began deliberations that if it "were unable to reach a unanimous recommendation, the court

*and you'll recommend one of two other possible penalties*.

　　　　* * *

The submission of these lesser penalties is not designed to relieve you from the performance of an unpleasant duty or obligation. They are included if the evidence fails to prove that degree which is required that the aggravating circumstances of this crime outweigh any mitigating factor that may exist.

　　　　* * *

*Again, this is a criminal case. Therefore, all twelve of you must agree on whichever verdict you sign. Again, I want to remind you, you cannot have a recommendation or a verdict if it is seven to five, ten to two or eleven to one. It must be twelve to zero.*

(J.A. at 2379-2380, 2383, 2384) (emphasis added). Here, the instruction communicated to the jury that all twelve members must agree on recommending or not recommending the death penalty before they could consider a life sentence. In other words, only after the jury, which was instructed that all twelve members had to agree, did not recommend death, were they instructed to continue deliberations on one of the possible life sentences. Of great significance, however, the jury instructions did not communicate to the jury that one juror could prevent the imposition of the death penalty. This instruction was given in direct contravention of the clear language of § 2929.03(D)(2) and *Brooks*. Under Ohio law, there is no requirement that the jury come to a conclusion on imposition of the death penalty before it considers imposing a sentence of life. Any instruction that imposes such a requirement is in violation of Ohio Revised Code § 2929.03(D)(2) and is misleading. *Brooks*, 661 N.E.2d at 1041. Ohio law also makes clear that one juror could prevent the imposition of the death penalty. Furthermore, that the trial court in Petitioner's case did not have the benefit of the *Brooks* decision does not change this result because the trial court did have the benefit of Ohio Revised Code § 2929.03(D)(2). Just as in *Brooks*, the preliminary

instruction in the instant case was erroneous and undermined the reliability of the jury verdict on death.

The majority's reliance on *State v. Davis*, 666 N.E.2d 1099 (Ohio 1996), to support a contrary conclusion is not persuasive inasmuch as the *Davis* decision is materially distinguishable from the case at bar. *Davis* does not require, as the majority suggests, that an instruction be virtually identical to the instruction given in *Brooks* before it runs afoul of the law. The majority relies on the holding of *Davis* without looking at the manner in which the court arrived at its decision in that case. Notably, the *Davis* court stated, "it cannot be disputed that the jury instruction given in this case lacks the clarity of the model instruction contemplated in *Brooks*, which urges trial courts to underscore a solitary juror's ability to prevent a death penalty recommendation." 666 N.E.2d at 1109. Thereafter, the court went on to consider, in addition to the challenged acquittal-first instruction, another instruction given to the jury. In that instruction, the trial court cautioned the jurors as follows:

> "Now, your initial conduct upon entering the jury room, again, is a matter of importance. You should consult with each other; consider each other's views, *and deliberate with an objective of reaching an agreement, if you can do so,* without doing violence to your individual conscience and good judgment.
>
> "You should do so only after a discussion and a consideration of the case with your fellow jurors.
>
> "Remember, each of you is equal in the jury room, and you shouldn't hesitate to change your opinion if convinced by your fellow jurors that you are wrong.
>
> *"However, do not surrender any honest conviction in order to be congenial, or to reach a verdict solely of the belief of the other jurors."*

*Id.* (emphasis added). It was only after reviewing "all of the instructions", that the court was able to conclude that "[e]ach

juror was made aware that he or she could prevent a death penalty recommendation." *Id.* Here, however, the jury was not given a similar instruction. Furthermore, there is no indication from the jury instructions that each juror was made aware of his or her ability to prevent a death penalty recommendation. Thus, *Davis* supports rather than undermines the conclusion that the jury instruction in this case violates the mandate of *Brooks*. The majority's reliance on *Davis* is therefore misplaced.

If the majority is to properly consider whether the *Allen* charge was unduly coercive, it must consider all of the circumstances under which the *Allen* charge was given, including taking into account the preliminary instructions. However, the majority erroneously considers the *Allen* charge in a vacuum, and ignores the very instructions that form the jury's understanding of its duty to render a verdict in a particular case. The preliminary instructions and the misrepresentations of Ohio law contained therein should not be ignored when considering the effect of the subsequent *Allen* charge on the jury.

The majority opinion is also fundamentally flawed insofar as it attempts to equate the instant case with *Lowenfield*. The majority claims that the instant case cannot be materially distinguished from *Lowenfield*. Contrary to the majority's contention, there are fundamental differences between both the language of the charge in *Lowenfield* and the circumstances under which it was given; these differences are apparent on the face of the *Lowenfield* decision.

In *Lowenfield*, at the penalty phase of the jury deliberations, the trial court admonished the jurors that they "should consider the views of others with the objective of reaching a verdict, but that they should not surrender their own honest beliefs in doing so. The court also charged the jury that *if it were unable to reach a unanimous recommendation, the court would impose a sentence of life without the possibility of probation, parole, or suspension*." 484 U.S. at 234 (emphasis added). On the second day of deliberations, the jury foreman